Cochran *v.* Elwell.

ABRAM COCHRAN, administrator *cum testamento annexo* of the estate of JASON ELWELL, deceased,

*v.*

GEORGE W. ELWELL et al.

The estate of a testator consisted of property in New Jersey and Pennsylvania. The will directed the executor to convert it into money, invest the money and pay the net income to the testator's wife during her life, and gave the wife power "to dispose" of the principal fund by will "to any of her children or grandchildren that she may think proper to bequeath the same to," and provided as follows: "In case my wife Nancy should neglect or refuse to devise said trust funds as aforesaid, whereby the same would descend equally to my heirs at law and thereby defeat the verbal contract that she has heretofore made respecting the grandchildren, the children of my daughter Mary Campbell, dec'd, to prevent such a contingency I order my executor to pay out of such trust funds, before any distribution of my estate, the sum of two hundred dollars to my grandchildren, the children of my daughter Mary Campbell, wife of Charles Campbell, said sum of two hundred dollars to be equally divided between them, share and share alike; and it is understood and intended on my part that said grandchildren, the children of my daughter Mary, are to inherit equally in addition as one of the heirs at law of my estate, the same as if the above bequest had never been made." During the life of the testator's widow, the income of the estate in New Jersey was paid to her by Abram Cochran, administrator *cum testamento annexo* in New Jersey, and the income of the Pennsylvania property was paid to her by an ancillary administrator in that state. The widow, by her will, directed that out of the moneys in the hands of Cochran (proceeds of the sale of the New Jersey property), there should be first paid $200 each to her living son and daughter, and that the balance of those moneys should then be divided into three parts, and that one part should be paid to her son, one to her daughter, and the remaining part equally divided between the two grandchildren mentioned in her husband's will. She also ordered that the New Jersey part of her husband's estate should pay the expense of settling her own estate, and then directed that the Pennsylvania moneys should be equally divided between her two living children. After the death of the widow, the Pennsylvania moneys were paid to Cochran, and he now asks direction as to the distribution of the entire estate.—*Held*, that the provision that the grandchildren should inherit equally as one of the heirs at law of the testator's estate was predicated upon the widow's failure to execute the power of appointment which was given to her, and upon the execution of that power became of no force; also, that the grandchildren are to be paid their $200

·from the entire estate—that is, proportionally from the two funds, distin-
;guished by the widow's will; also, that the expenses of settling the widow's
·estate cannot be charged upon any part of her husband's estate.

On bill for construction of will, and direction to administrator
·cum testamento annexo.

Jason Elwell died in June, 1882, having made his last will
·on August 25th, 1880, by which, among other things, he pro-
vided as follows:·

" *3d.* I order my executor hereinafter named to sell all my real estate that
I may die seized with, within one year after my decease, and place the pro-
·ceeds that may arise from such sale (together with all the remainder of my
personal property of every kind and description, howsoever found or situate),.
at interest, and the whole of said interest, less expenses and taxes, to be paid
to my beloved wife, Nancy Elwell, annually, for and during her natural life-
time, with power and authority in my said wife Nancy to dispose of the *whole*
·of said trust by will, and not otherwise, that may remain at her decease to any
of her children or grandchildren that she may think proper to bequeath the.
:same to. In case my said wife Nancy should neglect or refuse to devise said
trust funds aforesaid, whereby the same would descend equally to my heirs at
law and thereby defeat a verbal contract that we have heretofore made re-
specting the grandchildren, the children of my daughter Mary Campbell,
·dec'd, to prevent such a contingency I order my executor to pay out of such
trust funds, before any distribution of my estate, the sum of two hundred
·dollars to my grandchildren, the children of my daughter Mary Campbell,.
·deceased, wife of Charles Campbell, said sum of two hundred dollars to be
·equally divided between them, share and share alike; and it is understood ·and
intended on my part that said grandchildren, the children of my daughter
Mary, are, to inherit equally in addition as one of the heirs at law in my,
·estate, the same as if the above bequest had never been made."

Joseph Cook was named as executor of this will, but he re-
nounced the executorship and the complainant was appointed
·administrator with the will annexed in his stead. The testator's
·widow survived him. His next ·of kin and heirs· at law were.
the defendants, George W. Elwell, a son, Sarah E. Hitchner, a
·daughter, and Theodore Campbell and John T. Campbell, the
·children of a deceased daughter, grandsons. These defendants
·are also respectively children or grandchildren of the testator's .
·widow, Nancy Elwell.

The testator's estate consisted of some land and personal property at Daretown, in the county of Salem, in this state, and a distributive share in the estate of a sister who had been domiciled at Philadelphia and had predeceased him. The complainant took possession of the property in New Jersey and sold it, realizing by the sale $1,626.02, out of which sum he paid for the testator's debts and funeral expenses, together with the cost of administering that part of his estate, $844.14, so that of those moneys there remained in his hands for the purposes of the trust, created by the will, $781.88. That part of the testator's property which came from the estate of his sister was taken possession of by the Guarantee Trust and Safe Deposit Company of Philadelphia, it having been appointed ancillary administrator of the estate in Pennsylvania. The sum had by that company was $6,839.45. During the life of Nancy Elwell the income from the $751.88 was paid to her by the complainant, and the income from the $6,839.45 was paid to her by the Pennsylvania administrator. On February 5th, 1886, Nancy died, having made her will, of which the complainant is the executor, by which, among other things, she provided as follows:

"*Item.* It is my will and I do order that my executor hereinafter named shall, out of the proceeds of the moneys in the hands of Abram Cochran, administrator *cum testamento annexo* of my late husband, Jason Elwell, which came to his hands as proceeds of the personal property and real estate of my said husband, at Daretown, Salem county and State of New Jersey, shall first pay to my son, George W. Elwell, and my daughter, Sarah Hitchner, wife of Adam Hitchner, each the sum of two hundred dollars.

"*Item.* It is my will and I do order that my executor hereinafter named shall divide the balance of the moneys above referred to as follows—that is to say, one-third part to my son, George W. Elwell, one-third part to my daughter, Sarah Hitchner, and one-third part to be equally divided between Theodore Campbell and John G. Campbell, children of my deceased daughter, Mary A. Campbell. The above legacies are subject to the taxes and expenses of settling my estate. And in case of the death of either my son, George W. Elwell, or my daughter, Sarah Hitchner, before my decease, said deceased child's share to be equally divided between the children of said deceased child.

"*Item.* It is my will and I do order that my executor hereinafter named shall, subject to the taxes and all proper charges against the same, divide the moneys coming to my said husband's estate from the estate of Mary Snyder,

of Philadelphia, sister of my said husband, equally between my son, George
W. Elwell, and my daughter, Sarah Hitchner, share and share alike, and in
case of the death of either my son, George W. Elwell, or my daughter, Sarah
Hitchner, the children of said deceased to take the share of said deceased
child, share and share alike."

Since the death of Nancy Elwell the ancillary administrator
has paid the moneys that came to it, to the complainant, the
principal administrator of the estate of Jason Elwell, and he
now, by his bill, asks for directions in the distribution of the
entire trust fund. The defendants have all answered. George
W. Elwell and Sarah Hitchner contend that the will of Jason
Elwell gave Nancy Elwell a power of appointment by her will
which she properly executed, while John G. and Theodore
Campbell insist that the power of appointment was not properly
executed, because it required that in addition to $200 to be
equally divided between them, they should have such portion of
the trust fund as would have been distributable to them if the
testator had died intestate.

*Mr. C. H. Sinnickson*, for the complainant.

*Mr. M. P. Grey*, for Theodore and John G. Campbell.

*Mr. W. E. Potter*, for George W. Elwell and Sarah Hitchner.

THE CHANCELLOR.

The general scheme of Jason Elwell, evinced by his will, was,
that all his estate should be converted into money and invested
by his executor upon proper interest-bearing security, and that
out of the income, the taxes upon the funds invested, together
with the expenses of the trust, should be first paid, and that then
the remainder of the income should be paid to his wife during
her life. The wife was to have power to dispose of the principal
of the trust fund by her will, within a certain class of persons—
her children and grandchildren. To the point where the tes-
tator provides for the contingency of his wife's failure to execute
the power, the language of the will is free from doubt. The

distribution under the power is to be to "any" of the wife's children or grandchildren "that she may think proper to bequeath the same to." By force of the word "any" (which indicates that which is indefinite), it was left entirely to her discretion how many and whom of the persons within the designated class should be distributees.

The difficulty which occasions this suit arises in later passages of the will. The testator, conceiving that his wife might neglect or, for some reason, refuse to execute the power of appointment which he gave her, and that because of such failure the trust fund would, by law, be equally distributed among his next of kin, and that by such distribution the grandchildren, John and Theodore Campbell, would not be paid $200, which, under an agreement that existed between him and his wife, they were to have in addition to a share of the trust fund, provided that his executor should pay the $200 to his grandchildren before any distribution of the fund after his wife's death. To this provision he adds language (the effect of which is in question) as follows:

"And it is understood and intended on my part that said grandchildren * * * are to inherit equally in addition as one of the heirs of my estate, the same as if the above bequest had never been made."

The will does not definitely disclose what the verbal agreement between the husband and wife was, but it satisfactorily indicates that it was that the grandchildren were to have $200 in addition to the share which would be distributable to them in case the power of appointment should not be executed. Failure to execute that power would defeat the contract, and it was to guard against its defeat in that way that the $200 were provided for the grandchildren in direct and imperative terms. After such provision, if the power should not be executed, the $200 and the law's distribution of the remainder would give the grandchildren the shares intended for them.

In this situation, what force and effect had the words last quoted from the will? Did they limit and restrict the discretion in appointment which had previously been given to the widow, by requiring that she should give at least one-third of the trust

fund to the grandchildren, or did they merely refer to the testator's understanding of the legal effect of the will in case his wife should fail to execute the power?

I am constrained to think that the second proposition of this question is correct. The language considered is parcel of a sentence which made provision for the contingency of the wife's failure to execute the power of appointment, whereby the trust fund would be distributed by law. The testator's belief was, that in such an event the fund would "descend equally" to his "heirs at law," and in such a manner that his grandchildren would not have the additional $200 that he intended for them. In other words, he contemplated that there would be a distribution to his next of kin according to the statute regulating the distribution of estates of intestates, whereby the $200 would be lost to the grandchildren. His first step was to secure the $200 to the grandchildren, and then to declare his understanding of the law and his intention to be that they should take their proper distributive shares without reference to the fact that they would also take the legacy. His expression was, that they were to "inherit equally," that is, take by law, and not under the will, "in addition as one of the heirs at law of my estate," that is, in the place of their mother as one of his, the testator's, children, "the same as if the above bequest [of $200] had not been made."

The entire clause was predicated solely upon a failure to execute the power of appointment, and is distinct from the expressions which create the power.

It is obvious, that to adopt any other interpretation of this part of the will would do violence, not only to its language, but also to the grammatical construction of the sentence of which it forms a part.

Another question propounded is, from what moneys the $200 given to the grandchildren is to be taken. Is it to be paid out of the proceeds of the sale of the Daretown property, or out of the Philadelphia moneys, or *pro rata* from each?

The will of Jason Elwell directs that it shall be paid from the trust fund. That fund consists of all the moneys of the estate,

both those realized at Daretown and those had from Philadelphia. It is only in the execution of the power of appointment that there is a severance of the fund.

The power of appointment extends only to the balance of the fund after the $200 shall be paid, and the distribution made by its execution is not to be considered until that payment shall have been made. After its payment the severance may take effect. It follows, then, that each part of the entire trust fund should bear its proportionate share of this burden, and that the $200 must be paid by a percentage contribution.

The last inquiry concerns the effect of that part of Nancy Elwell's will which seeks to charge the proceeds of the Daretown property with the expense of settling her estate.

Mrs. Elwell's right in the trust fund was limited to the net income from it during her life and a power to distribute the principal of it, by her will, among certain persons. She had no power to appoint any part of it to her own uses, and hence had no power to direct the payment of the expense of settling her estate from it. That expense cannot be charged to any part of the fund.

The administrator will be directed in accordance with the opinion above expressed. The costs of all the parties to this suit, and moderate allowances to be made to counsel, will be directed to be paid from the entire trust fund, and, at the distribution, to be charged to the two funds, made by the appointment, *pro rata.*