Morse v. Hackensack Savings Bank.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Depue, Dixon, Gar-
rison, Magie, Reed, Scudder, Van Syckel, Brown,
Cole—10.

Daniel P. Morse, appellant,

*v.*

The Hackensack Savings Bank, respondent.

1. A sheriff's deed on the sale of lands under an execution takes effect as
an actual conveyance from the date of the sale, and not from the date of the
execution and delivery of the deed.

2. Where the will contains no devise of lands, but the testator has disposed
of his entire estate by means of a power to sell and divide the proceeds of sale,
the lands descend to his heir at law subject to the power of sale and the trusts
declared thereon contained in the will.

3. The estate of the heir at law intermediate the testator's death and the
exercise of the power of sale is an actual estate, which is alienable, devisable,
and descendable, and liable to seizure and sale as lands; but when the power
of sale is executed, the estate of the heir or his alienee is determined, and the
purchaser under the power becomes seized under the devisor by a title para-
mount to the title of the heir by descent.

4. Where a testator by his will directs the sale of his lands and the division
of the proceeds among his heirs at law, the latter may dispense with the sale
and elect to take the lands in lieu of the proceeds of sale.

5. The principle on which the doctrine of election rests is the identity of
the interest the heirs take as heirs at law, and in the proceeds of the conver-
sion. Where the testator charges his estate, real and personal, with the pay-
ment of his debts, and directs his executors to sell his real and personal estate
and divide the proceeds between his two children, the latter cannot elect to
take the lands as heirs at law, and by such election impair or defeat the rights
of testator's creditors.

6. A direction that the executor pay the debts of the testator out of his real
or personal estate is a charge of debts upon lands creating a trust which credit-
ors can enforce by compelling the executor to execute the trust.

7. No limitation of time is imposed upon a power in the nature of a trust·
not limited in terms, unless the rule against perpetuities is involved or the·

power is controlled by an inherent quality in the nature of the trust, or in the object for which the power was granted.

8. There may be circumstances and conditions under which the default of creditors in not requiring the execution of a power of sale in their favor, may amount to laches which a court of equity will lay hold of as proof of fraud. But in such cases the ground of relief is fraud, in knowingly permitting a power of sale to be kept outstanding as a menace with intent to protect trust property from the creditors of the person ultimately entitled.

On appeal from a decree advised by Vice-Chancellor Pitney, reported in *Hackensack Savings Bank* v. *Morse, 1 Dick. Ch. Rep. 161.*

Morse was the purchaser of lands whereof Peter R. Terhune died seized, at a sale made by Richard P. Terhune, the executor, under a power of sale given by the will of the deceased.

The Hackensack Savings Bank was the purchaser at a sheriff's sale of the estate of Richard P. Terhune, an heir at law of the testator, in lands of the deceased.

The decree appealed from set aside Morse's title in favor of the complainant's title. From this decree Morse appealed.

*Mr. John Linn,* for the appellant.

*Mr. C. H. Voorhis,* for the respondent.

The opinion of the court was delivered by

DEPUE, J.

Peter R. Terhune died in January, 1879, seized of certain real estate in the county of Bergen. By his will, executed January 2d, 1878, he provided as follows:

"I order and direct my executor hereinafter named to pay all my just debts, funeral and testamentary charges, as soon as can be after my decease out of my real or personal estate.

"I give and bequeath unto my wife Mary Ann, the sum of five hundred dollars, to be paid to her after my decease, and I do direct that said legacy shall be in lieu of my wife's dower in my estate; also an annuity of one hundred and fifty dollars a year, to be paid in half-yearly payments, as long as she remains my widow.

" I hereby authorize and empower my executor to sell and dispose of all my real and personal estate of which I may die seized, either at public or private ·sale, for such price as he shall deem proper, and give to the purchaser of the same a good, valid and absolute title thereto.

" I give, bequeath and devise all the proceeds of my real and personal estate in manner following, that is to say, after paying the above-described legacy and annuity, one-half to my son Richard Paul Terhune and one-half to my daughter Margaret, the wife of Garrit G. Oldis."

Richard P. Terhune, the executor named in the will, duly proved the will, and letters of probate were issued thereon January 29th, 1879. Richard P. Terhune, the executor, and his ·sister, Margaret Oldis, to whom the proceeds of the sale of the ·testator's real and personal property, after satisfaction of the ·charges thereon, were given, were the only children and heirs at law of the deceased.

On the 3d of November; 1880, the Hackensack Savings Bank, the complainant, recovered a judgment against Richard P. Terhune for $3,450 damages, and $14.50 costs, and on the 11th of May, 1888, execution was issued upon the judgment and put in the hands of the sheriff of Bergen, and executed by a levy on all the right, title and interest of Richard P. Terhune in one of the tracts of land of which the testator died seized. The sale having been duly advertised, the premises were set up and sold on the ·29th of August, 1888, to the complainant for the sum of $50. The sheriff's deed was not delivered until the 27th of September, 1888. The date of the delivery of the sheriff's deed is a circumstance of no importance. A purchaser at a sheriff's sale acquires by the act of purchase a right to a conveyance of the premises in pursuance of the sale. The delivery by the officer of a deed is ·a mere ministerial act which the officer is required to perform to ·consummate the sale and vest in the purchaser a title in compliance with the law under which the sale was made. *Walker* v. *Hill's Exrs.*, *7 C. E. Gr. 513, 530.* The sheriff's deed when ·delivered has relation back to the time of the sale of which it is the consummation. *Jacobus* v. *Mutual Benefit Life Ins. Co.*, *12 C. E. Gr. 604, 608.*

At a public sale on the 22d of September, 1888, Richard P. ·Terhune, as executor of his father, under the power of sale con-

tained in the will, sold the lands of which his father died seized,. to Daniel P. Morse for the sum of $1,000, and duly made a deed of conveyance therefor. The deed to Morse is dated September 22d, 1888, and was recorded in the clerk's office on the same day. As a conveyance of the property the executor's deed was, in legal effect, subsequent in point of time to the sheriff's deed to the complainant.

The complainant's bill was filed to set aside and annul the Morse deed in favor of the complainant's title under his deed from the sheriff. The charge in the bill is, that Terhune, as executor of his father, made sale and conveyance to Morse, under the power contained in the will, to hinder and delay the complainant, a creditor of the said Richard P. Terhune, and to defeat the judgment the complainant had against him, and that the deed to Morse was fraudulent and void as against the complainant. The prayer for relief is, that the deed to Morse be declared fraudulent and void, and that it be decreed that the complainant is seized of and entitled to the one equal undivided part of the tracts of land &c. wholly unaffected by the executor's deed. To this bill Richard P. Terhune, individually and as executor, and Daniel P. Morse alone were made parties. An answer under oath was called for. Both defendants answer, and in their answers under oath severally deny that the said sale and purchase were made to hinder or delay the complainant, or to defeat his judgment, or for any fraudulent purpose. Terhune in his answer sets out, that for the purpose of settling up the testator's estate it was necessary to make sale of all the real estate whereof the testator died seized ; that the property was sold for the purpose of enabling him to pay debts of the deceased and distribute the proceeds of the sale according to the directions of the will, in case more was realized than was sufficient to pay the testator's debts,. and that the said sale was made by him in good faith without any fraudulent intent or purpose.

It is not disputed that the testator was indebted to one Richard Romaine on a promissory note for $1,995, made April 1st, 1877,. payable twelve months after date. At the time of the sale by the executor $1,000 were due on the note, which was paid by the-

Morse v. Hackensack Savings Bank.

executor September 22d, 1888, by the check he received of Morse for purchase-money, and the note was taken up. That Romaine's debt was due from the estate of the deceased, and that $1,000 of that indebtedness was unpaid when the executor made sale, and that that indebtedness was satisfied by the proceeds of the sale, are undisputed. Nor is there any contention in allegation or fact that the executor's sale was a fraud upon the power of sale, either in the manner of advertisement, or in the conduct of the sale, or in the price realized. The property brought $1,000 at the sale, the one-half interest in which the complainant bought at its sheriff's sale for the sum of $50. The bill is not framed in that aspect. The object of the suit is to appropriate to the payment of Richard's debt property of the testator put in trust by him for the payment of his own debts, to the exclusion of the testator's creditors. In such a contest as this, Morse, as purchaser at the executor's sale, must be regarded as succeeding to the rights of Romaine as a creditor of the testator.

The testator by his will made disposition of his entire estate, to be wrought out by the intervention of the power conferred upon his executor. He directed that his whole estate, real and personal, should be converted into money, and, after making provision for debts, funeral and testamentary expenses, and an annuity to his widow, he gave the residue of the proceeds of his estate in equal shares to his two children. The will containing no actual devise of lands, the title and usufruct of the lands descended to his heirs at law, subject, nevertheless, to the power of sale and the trusts declared thereon contained in the will. The estate which the heirs took at the testator's death was an actual estate, which was alienable, devisable and descendable, and liable to be seized and sold as lands ; but when the power of sale was exercised, the estate of the heir or his alienee was determined, and the purchaser under the power became seized under the devisor by a title paramount to the title of the heir by descent. *Herbert* v. *Exr. of Tuthill, Sax. 141; Den.* v. *Snowhill, 3 Zab. 447; Gest* v. *Flock, 1 Gr. Ch. 108; Fluke* v. *Exrs. of Fluke, 1 C. E. Gr. 478; Wetmore* v. *Midmer, 6 C. E. Gr. 242; Leggett* v. *Doremus, 10 C. E. Gr. 122; Holman* v. *Tigges, 15 Stew. Eq. 127, 131;*

*Moores* v. *Moores, 12 Vr. 440; Doe, dem. Wigan,* v. *Jones, 10 · Barn. & C. 459; Anonymous, Jenkins 184, Case LXXV.*

By the purchase at the sheriff's sale the complainant acquired only Richard's estate as an heir at law, subject to the trusts and power of sale contained in the testator's will. If the power of sale subsisted and was capable of being executed at the time of the sheriff's sale, the purchaser at the executor's sale took a title under the testator's will paramount to any estate derived from or through Richard. To prevail in this suit the complainants must show either that the power had then expired or was extinguished, or present some equitable grounds on which, in a court of equity, creditors of the testator should be postponed in favor of the creditors of Richard.

It is insisted, in the first place, that Richard and his sister had elected to hold the lands as heirs at law of their father, and not have them converted into money under the will and the proceeds divided between them, and that the complainant is entitled to have Richard abide by his election. Where a testator by his will directs the sale of lands and the division of the proceeds among his heirs at law, the latter may dispense with the sale and elect to take the lands in lieu of the proceeds of the sale. The bill does not charge an election, and the proof of an election in fact is very meagre. The only evidence on the subject is the testimony of Morse. He testified—

"That the tenant on the farm when he bought did not have the whole farm the last year; he rented the house for $60 a year, and part of the ground for a certain sum, which, if I knew, I have forgotten; the balance of the farm was rented to different persons. The gross sum which Mr. Terhune received for it was not more than $5 or $10 difference from the price I obtained letting it all to one person."

This evidence was brought out in the examination of the witness touching the value of the property. Morse rented the property for $125. There was a mortgage on it for $2,000, and the annual taxes were $86. The interest and taxes were paid up to the last due day. For how long a time Richard received the rents, and in what capacity, and what disposition he made of them, whether he applied them to keep down the interest on

encumbrances, to pay taxes and repairs for the benefit of the trust estate, or for his individual benefit, does not appear. Mrs. Oldis never had possession or exercised control over the property. An election may be inferred from the conduct of the party whose province it is to elect—his acts, omissions, and his mode of dealing with the property ; but in order that an election may be inferred from conduct, the acts done must be shown to have been done with the intent to elect, and be quite decisive. *1 Pom. Eq. Jur. 515.* The burden of proof is on the complainant, and the evidence adduced is insufficient to establish an election in fact by the heirs at law.

The principle on which the doctrine of election rests, is the identity of the interest the heirs take as heirs at law, and in the proceeds of the conversion into money. Where the whole beneficial interest in the land directed to be converted belongs to the person for whose use it is given, equity will not compel or allow the trustee to execute the trust against the wishes of the *cestui que trust,* but will permit him to take the land if he elect to do so ; but where there are several *cestuis que trust* taking different interests under the will from what they would do as heirs at law, there is no case for the application of the doctrine of election, and the executor must perform the trust created by the will. *Fluke v. Exrs. of Fluke, 1 C. E. Gr. 478.* Under the testator's will the creditors of the testator and his wife were interested in the trusts created by it as well as his heirs at law, and the interests of the former had priority over those of the latter. If Richard and his sister, as heirs at law, had made an election, and sufficiently manifested their purpose to do so, they would take as lands only the interest in the realty that was represented by the residuary devise, subject to the prior trusts with which the lands were charged. By no election or act of their own had they power to impair or discharge the rights of the other beneficiaries.

In addition to this, Richard, whose estate is in controversy, was under a disability which excluded him from making election. He was the executor, and proved the will, and accepted the trusts created by it. He had not the capacity to do any act in relation

to the trust property which would enure to his own benefit and operate to impair or defeat the trusts he undertook to perform.

It was contended, in the next place, that the exercise of the power was not in good faith for any legitimate purpose under the will, but simply for the purpose of hindering and delaying the complainants in the collection of their debt.

The charge in the testator's will of his debts upon his estate created a trust which creditors could enforce *ex debito justiciæ* by compelling the executor to execute the trust. It created, also, an obligation on the part of the executor to protect the trust estate to answer the objects of the trust, and it is no impeachment of his conduct towards his own creditors that of his own volition he took steps to execute the trust. If he had stood by and suffered the trust estate to be applied to the payment of his own debts, his conduct would have been a breach of trust. The only act indicative of fraud upon the creditors of the executor charged in the bill is, that he induced the sheriff to adjourn the sale and to postpone delivery of the deed, and hastened a sale under his power that the deed he might make should be executed and delivered before the sheriff's deed. The utmost effect that can be given to that transaction would be to estop the purchaser from any advantage arising from the mere priority of his deed in point of time. It could not avail to extinguish the power or defeat its execution, which would be equally efficacious whether the executor's deed was made after or before the sheriff's deed. In fact, the complainant suffered no injury by the postponement of the delivery of the sheriff's deed; the deed operated when delivered as of the date of the sheriff's sale. If the court should be constrained to set aside the executor's deed on that ground, the power would remain to make a new sale in the interests of the testator's creditors with precisely the same consequences.

Under this head it was insisted that the creditors of the testator by delay had lost the right to have the trust executed—the creditors of Richard having in the meantime acquired rights which a court of equity would protect against the execution of the power.

The testator died in January, 1879. The executor's sale was made in September, 1888, upwards of nine years after the testator's death. There is no statute of limitation applicable to a trust of this character. No limitation can be implied from the limitation imposed by the statute making lands liable to be sold for the payment of the debts of a decedent. The power to sell to pay debts when the testator charges his real estate with the payment of debts is derived from the will; the title derived under such a power is title under the devisor. So favorably does the law regard a charge of debts upon lands, that the struggle has been with respect to the application of the statute of limitations to the debts so charged. There are cases where an unlimited power of sale will be restrained by the courts. Thus, the courts will not permit the execution of a power where the effect will be to create an estate obnoxious to the rule against perpetuities. *1 Lew. Trusts 605; In re Cotton's Trustees, 19 Ch. Div. 624.* So, also, the court will not allow a power to be executed where, in the interval of time that has elapsed, the object for which the power of sale was created has been substantially accomplished. In *Peters* v. *Lewes, 16 Ch. Div. 703*, the testator devised his residuary estate to trustees in trust for his wife for life, and after her death to pay and assure the same to his two unmarried daughters in equal shares for their separate use, "and for the purpose of division" he empowered his trustees to sell his residuary estate. Vice-Chancellor Hall held, that the power of sale determined on the death of the widow, because the daughters as *femes covertes* then became absolutely entitled for their separate use, and the property was "at home." On appeal (*18 Ch. Div. 430*), Jessel, M. R., said: "No doubt you cannot have a power of sale to change the nature of the interests limited by the instrument so as to exceed the limit of time prescribed by the rule against perpetuities. * * * And the courts have decided that powers, although framed in general terms, are limited by the nature of the limitations contained in the settlement or will; so that when by reason of the expiration or cesser of the limitations * * * the absolute interests come into existence, then the power is considered to be at an end." He dissented

from the view of the vice-chancellor, that the power of sale terminated on the death of the tenant for life, and held that inasmuch as the power was not to be exercised until after the death of the widow, it might be exercised " within a reasonable. time after her death occurred." It is manifest that the remarks of the master of the rolls with respect to reasonable time had reference to the rule against perpetuities ; for the only observation he makes with respect to an interval of time being " reasonable " is, that " no one would say that twenty-one years was a reasonable time." The learned master of the rolls was dealing with the validity of the power itself, and there is no indication in the opinion that he entertained the view that a power in terms unlimited, and uncontrolled by an inherent quality in the nature of the power with respect to the purpose for which it was granted, must be executed in a reasonable time or it will become inefficacious.

In *Humble* v. *Humble, 2 Jur. 696*, the testator devised his real estate to trustees for a term in trust by a mortgage or sale of all or any part thereof, or out of the rents and profits to levy and raise a sum or sums as should be necessary to pay debts and legacies if his personal estate should fall short or be insufficient to pay the same ; and subject to the said term and the trusts thereof, the testator devised his lands to his three sons, Joseph, John and Thomas, and appointed them his executors. The testator died in 1798. The executors proved the will, and possessed themselves of personal estate more than sufficient to pay all the debts and legacies, but the personal estate was wasted and misappropriated, leaving certain legacies unpaid. In 1808 Joseph died insolvent, and in November, 1809, the surviving trustees under the testator's will filed a bill for payment of their legacies out of the real estate by a sale. Lord Langdale, M. R., held that the legatees were entitled to the benefit of the term in priority to the claims of the creditors of the executor. In delivering his judgment, Lord Langdale said : " It is not easy to find any distinct equitable ground on which to maintain the claim set up by the creditors against the legatees. Joseph was entitled to one-third of the residuary personal estate of the testator, and also to

one-third of the real estate, subject to the legacies; he was also an executor, whose duty was to see that the legacies were paid, the personal estate being sufficient. Now, it must be said, that the legatees ought to have seen that the personal estate was duly applied, and that this was so entirely their duty, that not having done it, they are not to have the benefit of the trust created in their favor in the real estate. That is a proposition which, I think, cannot be maintained. The testator intended the legacies to be paid; he gave the residue of his real and personal estate to three persons whom he appointed to be his executors; but he did not leave it in their option out of which fund the legacies should be paid, but created a term, which he vested in trustees for the purpose of raising the legacies if the personal estate should fall deficient to pay them. The personal estate did not fall deficient in consequence of the testator not leaving a sufficiency, but it did fall deficient in consequence of the misappropriation of it by the executors. Are the legatees, then, to be disappointed for the benefit of those who have done the wrong, or can the creditors of the devisee claim that which the devisee was not entitled to? The devisee was only entitled to the share of the reversion after the term should be satisfied. I am of opinion that the legatees are entitled to the benefit of this term."

In *Howard* v. *Chaffer, 9 Jur.* (*N. S.*) *767,* the testator devised real estate to trustees for a term to raise money sufficient for the payment of such of his debts as his personal estate should be insufficient to pay. Subject to the term he gave the real estate to his sons B. and T., whom he appointed executors. The testator's personal estate was sufficient at his death to pay all the debts and legacies. The debts and all but two of the legacies were paid, but the executors spent the rest of the personal estate and became bankrupts, and had made several mortgages on the real estate for money loaned to them. The testator died in 1846; the bill to charge the unpaid legacies was filed in 1857. Vice-Chancellor Kindersly, following *Humble* v. *Humble,* decreed that the real estate as against the mortgagees was subject to the two unpaid legacies.

I have cited these cases because of the similarity of the facts upon which they were decided with those in the case in hand. They are illustrations of the extent to which courts of equity will go to protect beneficiaries under trusts created by a testator from the acts of the trustee who, at the same time, is executor and an heir at law, or residuary devisee. Those suits were brought in behalf of legatees. In the settlement of the estates of decedents, creditors' always have a preference over legatees; and in the administration of trust property, creditors of the testator for whose benefit the trust was created have a vantage ground vastly superior to that of creditors of the trustee.

No case has come under my observation in which a limitation of time has been imposed upon a power in the nature of a trust not limited in terms, unless where the rule against perpetuities is involved, or the power is controlled by an inherent quality in the nature of the trust, or in the object for which the power was granted. In *Scudder* v. *Stout, 2 Stock. 377,* Chancellor Williamson upheld a conveyance made by trustees under a power seventeen years after the power had accrued. In *Moores* v. *Moores, 12 Vr. 440,* the testator by his will directed that his debts should be paid out of his estate, real and personal, and empowered his executrix to sell and convey the real estate to enable her to carry the direction into effect. The testator died in 1834, and in 1836 the executrix settled her accounts in the orphans court. In January, 1878, the executrix sold and conveyed the lands under the power granted in the will. To overthrow this conveyance the supreme court resorted to a presumption that the debts had been paid and the power had ceased to have any legal existence, arising from the fact that the power had not been executed until more than forty years had elapsed after the settlement of the testator's estate. *Pearce* v. *Gardner, 10 Hare 287; Cuff* v. *Hall, 1 Jur. (N. S.) 972; Marsh* v. *Love, 15 Stew. Eq. 112,* are cases holding that time limited in the power, unless it be made the essence of the power, is directory only, and that a sale may be made after the expiration of the specified time—the court having regard to the substance of the trust for which the power of sale was given.

Morse *v.* Hackensack Savings Bank.

There may be circumstances and conditions under which the default of creditors in not requiring the execution of a power in their favor may amount to laches which a court of equity will lay hold of as proof of fraud; as where creditors with the intent to protect trust property from the creditors of the person ultimately entitled, knowingly permit a power of sale to be kept outstanding as a menace to those creditors. The ground of relief in such cases is fraud. But no case of this significance is made in the bill or established by the evidence.

Richard, in his answer, which is responsive to the bill and uncontradicted, says that he had for several years, from time to time, made effort to dispose of the testator's real estate at private sale, but was unable to do so. All that appears with regard to his conduct in delaying the sale is, that he was holding the property for a market. Romaine duly presented his claim to the executor under oath, which gave him a *status* to entitle him to have his debt paid out of the assets provided for the payment of debts. He received from the executor substantial payments on account—in April, 1883, $400; October 16th, 1883, $200; May 15th, 1884, $200; and May 19th, 1885, in sums paid at various times, $200 were credited on the note. In 1884, or 1885, he brought suit on the note, and on receiving a payment (June 30th, 1886, $85) on account, did nothing after that except soliciting payment of the balance at different times. His debt was a *bona fide* debt. He had ample security for its payment in the charge upon lands by the will, which was on record and notice to Richard's creditors that the lands were liable for the payment of the testator's debts in priority of any estate or right of Richard therein. In these facts I see no evidence of fraudulent conduct on the part of Romaine towards Richard's creditors which should deprive him of his rights as a creditor of the testator to have his debt paid out of the assets the testator provided for the payment of his debts.

The debt of Richard for which the complainants' judgment was entered was contracted in January, 1878, a year before the testator's death. The complainants did not give credit to Richard upon the faith of his ownership of these lands. Nor were the

complainants hindered or delayed in the collection of their debt by Richard's delay in executing the trust. They recovered their judgment in November, 1880, and might have proceeded at once to sell the estate of Richard as heir at law subject to the power of sale conferred by the will, and might have gone .into possession and had the receipt of the rents and profits until a sale under the power was effected, and also would thereby have been in position to coerce a speedy settlement of the estate. The execution under which the levy and sheriff's sale were made was not issued until the 11th of May, 1888.

By the supineness of all concerned—Richard, the executor, who, as one of the residuary devisees, was interested in procuring a good market for the premises; Romaine, the creditor, whose debt was amply secured; Mrs. Oldis, who was interested with Richard in the residuary estate, and the complainants, who might have sold immediately upon the recovery of their judgment in 1880—the power of sale was suffered to remain unexecuted until the sheriff's sale, in September, 1888, precipitated the action of the executor in looking after the threatened diversion of the trust property from the purposes of the trust to the payment of his own debts.

Upon the case made by the bill, and the facts appearing in the record, I am unable to agree with the views of the learned vicechancellor, that the title of the complainants under the sheriff's sale was superior to that of the purchaser at the executor's sale, and shall vote to reverse the decree and dismiss the bill.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Depue, Garrison, Magie, Reed, Van Syckel, Brown, Cole, Smith, Whitaker—10.