THE TRUST COMPANY OF NEW JERSEY, complainant-respondent,

*v.*

MAGDALENA GLUNZ et al., defendants-respondents, and CHRISTINA LINK et al., defendants-appellants.

[Submitted February 12th, 1937. Decided April 30th, 1937.]

*Messrs. Carey & Lane,* for the complainant-respondent.

*Mr. William L. Rae,* for the defendants-respondents.

*Mr. Henry Ewald,* for the defendants-appellants Barbara Hansmann, Christian P. Rath, Anna Wecker, Mary Lutz and Bay View Cemetery Company.

*Mr. William R. Gannon,* for the defendants-appellants Christina Link and Christina Guthinger.

The opinion of the court was delivered by

DONGES, J.

This is an appeal from a decree of the court of chancery construing the will of John Glunz, deceased, and giving the complainant executor certain instructions. Testator died April 6th, 1931. By a will dated March 24th, 1931, after the usual provisions he devised to his wife the home in which they had lived; bequeathed her a general legacy of $15,000; and then made other pecuniary bequests amounting in all to $27,990. He disposed of the residue of his estate in paragraph 13 of the will, as follows:

"I give, devise and bequeath all the rest, residue and remainder of my said estate both real, personal, and mixed, that I now possess or may possess in the future unto my executors and trustees hereinafter named, subject to the following trust: They shall pay the income thereof to my said wife, Magdalena Glunz, for and during the period of her natural life, in quarter annual payments beginning six months after my decease, if possible, and they shall also pay any and all necessary and extra-ordinary hospital bills and medical bills, that they may deem proper, that may be incurred by my said wife during her lifetime. The amount paid for said bills shall be questioned by no one."

After the death of the wife, the remainder of the residue is to go to sisters of the testator.

Paragraph 17 gives the executors power of sale and provides:

"In the event that there is not sufficient moneys to pay the bequests herein named, my said executors and trustees shall dispose of my real estate, but not for a period of three years after my decease, if they deem it necessary and proper, and the payment of said bequests herein shall in that event be not payable until six months after the sale of my said real estate. My said executors and trustees shall have power to do any and everything in the management and disposal of my estate as if I could do, if I was living."

It appears that there was not sufficient personalty to pay the pecuniary legacies without sale of the real estate; that the real estate has not yet been sold, nor have the legacies been paid. From six months after decedent's death to the filing of the bill, the complainant bank, executor, has been paying the sum of $100 per month to the widow. The income has been more than sufficient to pay this amount.

The bill asks (1) a declaration of the rights of the various parties in interest; (2) approval of the monthly payments. already made to the widow and instructions as to future payments to her; (3) whether the real estate should be sold now or held for more favorable market conditions; and (4) instructions as to the future administration of the estate.

The vice-chancellor held (*119 N. J. Eq. 73*) that the payments of $100 a month to the widow were properly made; that the real estate should be held until sale could be made under more favorable conditions; that the widow was entitled to the gross income of the estate until such time as the properties were sold and the legacies paid; that the legacies became due and payable three years and six months after testator's death and, when they are paid, they shall draw interest from that time, that is, three years and six months after testator's death.

From this decree the remainderman and all those entitled to the pecuniary bequests except one appeal. The widow and her son, who was one of the legatees, are respondents and defend the decree.

First, as to the propriety of permitting the sale of the real property to be deferred. It appears that the estate is inventoried at about $62,800, the greater part of which is in real estate. The pecuniary bequests total about $43,000. The real estate seems to be producing a satisfactory income. The witness Adams testified that in a little over four years after the testator's death, the rents amounted to about $22,000 and the expenses to $13,600, leaving a net income of about $8,300. It is testified and not controverted that there is no present satisfactory market for this kind of real estate, and that a fair price cannot now be obtained. The vice-chancellor, in his conclusions, states that it was conceded before him by all parties that it would be unwise to sell the property at this time. In spite of this, the appellants insist in their briefs that this part of the decree is erroneous.

The court has power, in the protection of an estate being administered under its control, to defer the sale of assets until such time as they can be disposed of without undue loss

to the estate. Particularly is this true when, as here, the testator gave directions that the sale of real estate should, if deemed proper, be postponed, and further directed: "My said executors and trustees shall have power to do any and everything in the management and disposal of my estate as if I could do, if I was living."

In *Pennington* v. *Metropolitan Museum of Art, 65 N. J. Eq. 11* (cited with approval in this court in *MacKenzie* v. *Trustees of the Presbytery of Jersey City, 67 N. J. Eq. 652,* at *p. 676*), it was said:

"If trustees disclose a situation of their trust in which a slavish adherence to the terms of the trust will operate to wholly prevent the benefits intended by its creator, and they seek instructions and directions as to their duty, I think that instruction and directions for a course of conduct which, though differing from that prescribed by the terms of the trust, will actually carry out the intent of the creator, may well be grounded upon and sustained by the necessity of the case. The benefits intended for the beneficiaries are the main subjects of consideration. The modes in which those benefits may be attained are incidental, and necessity may require a change of mode to produce the intended effect."

Second, as to the time when interest becomes payable on the bequests. Undoubtedly the rule is that in the ordinary case a legacy is payable one year after the death of the testator with interest from that time. But this is not so where the will fixes a different time for the payment of the legacy. *Davison* v. *Rake, 45 N. J. Eq. 767, 770.* The rule then is that interest becomes payable when the legacy becomes demandable. *Ashton* v. *Wilkinson, 53 N. J. Eq. 6; affirmed, 53 N. J. Eq. 227; Christian* v. *Catholic Church of St. John, &c., 91 N. J. Eq. 374.* In view of the language of the will, above quoted, it was correct to hold that interest commenced to run three years and six months after testator's death, which was the time allowed by him to sell the real property and pay the legacies, and that being the first time when the legacies were demandable.

The remaining question is as to the disposition of the income from the gross estate. The vice-chancellor held that

until the legacies are paid the widow is entitled to the entire income, and when the legacies are paid they shall be paid with interest. This interest would then have to come out of the *corpus* of the residue, since the income will all have been paid out.

In *Berger* v. *Burnett, 95 N. J. Eq. 643,* Mr. Justice Trenchard deals with this subject. After dealing with the principles involved, he lays down a practical rule for computing the disposition of income on gross estates, in the following language:

"In view of the fact that no pronouncement has ever been made on the subject by this court, there is nothing to prevent the adoption of a method of calculation that is both simple and fair in view of present-day conditions.

"Now it is an elementary proposition that where there is a gift to B for life of the equity of redemption of real estate, that B, the life tenant, is entitled to the income from the life estate subject to payment of interest on the encumbrances. And ordinarily a life tenant of property subject to encumbrances must keep down the interest accruing on such encumbrances during the continuance of his estate, at least to the extent of the income or rental value of the property.

"Similarly, where there is a gift by a testator of a life interest in the residue of his estate (*i. e.,* his equity after payment of debts, &c.,) the interest on the debts of the testator accruing after his death should be charged against and paid out of the income of his gross estate.

"Such a rule would require no complicated calculations. If the income on the gross estate for a given period amounted to $5,000, and the interest on the debts, &c., for the same period amounted to $2,000, the life tenant would receive the difference of $3,000 as income for that period. * * *

"* * * It [the method being outlined] would be applicable whether the estate were wound up in one year or five years. As each payment was made from day to day on account of debts, &c., the interest accrued thereon since testator's death would be charged against the income accrued on the total estate. The balance would go to the life tenant.

"It might be that in some isolated instances either the life tenant or remainderman might pay a larger sum than under other methods. For example, if the gross estate produced less income than the debts carried interest, the life tenant would temporarily suffer until the difference were made up. On the other hand, if in a given case the debts or legacies carried no interest, then the life tenant would be the gainer, for he would then get all the income on the gross estate."

This is the method of computation to be applied to the instant case, and under it the life tenant, the widow, would be entitled to all the income on the gross estate during that period when no interest was payable on the legacies. That is for the period down to three years and six months after the death of the testator. There are apparently no debts in this case. However, after interest accrues, the life tenant should receive the income on the gross estate, less an amount necessary to meet the interest payments which will be made to the beneficiaries of the legacies when they receive their legacies. Otherwise, she will profit unjustly at the expense of the remaindermen, because the interest will necessarily have to be paid out of the *corpus* of the residue if she receives all income down to the time the payments are made.

If this be so, then the payments of $100 a month should be approved, because the income was sufficient to make them. The widow should receive all the income down to a time three years and six months after testator's death. From that time, and in the future until settlement is made, the executor should withhold from the income of the gross estate an amount sufficient to meet the interest charges as they accrue and pay the balance of the income of the gross estate to the life tenant.

With this modification, the decree is affirmed.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 14.

*For modification not on opinion*—HEHER, J. 1.