Frederick Walker died January 13th, 1926, leaving a will dated February 7th, 1914, admitted to probate January 29th, 1926, whereon letters testamentary were granted to Rutherford H. Walker (a nephew of decedent) the sole executor named in the will. The will contains the following clause:
"Ninth. It is my will and I hereby order and direct that all the rest, residue and remainder of my property and estate of whatsoever kind and nature and wheresoever situated and not hereinabove in anywise disposed of, excepting however the cash or money remaining in the hands of my executor, shall be sold and converted into cash or money whenever and as soon after my decease as my executor hereinafter named shall, in his judgment and discretion, consider and deem proper and to the best interest and advantage of my residuary estate, either at public or private sale and after the sale and conversion into cash of theresiduum of my estate, other than cash, I order and direct that my executor hereinafter named shall, after *Page 499 
building a suitable and appropriate mausoleum for the sepulture of my earthly remains, distribute and disburse all of the cash remaining and constituting the entire residuum of my estate, to such of my relatives me surviving, and in such manner and proportions as he, my executor hereinafter named, may deem wise, just and prudent."
The bill of complaint herein was filed December 12th, 1938, on behalf of a sister and a nephew of decedent and the administratorcum testamento annexo of another sister who survived the decedent and subsequently died, charging that the executor was discharged as such May 8th, 1936, at which time substituted administrators cum testamento annexo of the decedent were appointed; that the executor failed to exercise the power under the ninth clause of the will and that the surviving heirs and next of kin of the decedent are entitled to take the estate in such proportions as though the decedent had died intestate. The prayer is for construction of the will and declaration of complainants' rights thereunder.
The defendant Rutherford H. Walker, who had acted as executor until his discharge as such, answered the bill alleging that on April 24th, 1936, he had exercised the power given him under the will and had distributed and disbursed the residuum of the decedent's estate to the following, being some of decedent's relatives who survived him:
Louisa Knoebel (a sister and a complainant) ....................... 15%
Ida Walker (a sister who subsequently died and whose administrator
 cum testamento annexo is a complainant) ......................... 5%
Vivian D. Walker (a niece) ........................................ 20%
Cynthia V. Walker (a niece) ....................................... 20%
Cynthia D. Walker Herriott (a grandniece) ......................... 10%
Herman Walker (a grandnephew) ..................................... 10%
William Walker (a nephew) ......................................... 5%
Albert Walker (a nephew) .......................................... 5%
Frederick Walker (a nephew and a complainant) ..................... 5%
Frederick Lundie (a nephew and a complainant) ..................... 5%

Other defendants answered, complainants filed replications and thus the issues to be decided are presented, the chief question being: Did Rutherford H. Walker, by the instrument he executed April 24th, 1936, exercise the power given him by the ninth clause of the will, in the manner directed or intended by the decedent? *Page 500 
The terms by which the direction and power were conferred on the executor being to distribute and disburse the decedent's residuary estate among such of decedent's relatives who might survive him and in such proportions as the executor might deem wise, just and prudent; the executor had an exclusive power in his discretion to select the beneficiaries from among such relatives, excluding such of them as he saw fit, and to determine what proportion of the estate each relative selected should receive. Cochran v. Elwell, 46 N.J. Eq. 333; affirmed, subnom. Campbell v. Cochran, 48 N.J. Eq. 307. The power of appointment, so far as the selection of beneficiaries and the allotment made to each, was exercised in accordance with the decedent's directions.
The method in which the executor exercised the power was by executing a written declaration duly witnessed and acknowledged, wherein the executor recited the ninth clause of the will, declared his desire to appoint and name the persons who should receive the residuum of decedent's estate and to distribute and disburse said residuum to them, and stated that in the exercise of said power he appointed the persons hereinabove named as the beneficiaries and distributees of the residue of the decedent's estate and assigned, transferred and set over the same to them, and all cash after conversion of the residue of the estate into cash, in the proportions hereinabove set out, declaring that he intended by such instrument to exercise the power given him by said will to the full extent that resided in him.
The will leaves it to the executor to distribute and disburse the residue "in such manner" as he may deem wise: it does not specify any particular mode whereby he should evidence the exercise of his power and therefore it was only necessary that the method he adopted disclosed a definite intention to execute the power (Cueman v. Broadnax, 37 N.J. Law 508) and the instrument he executed certainly evidences such intention.
It is contended by complainants and some of the answering defendants that the execution of the power was ineffectual because the executor did not give notice of his act and that complainants and other interested parties were not aware *Page 501 
of the existence of the instrument until two years after its execution. Immediately upon its execution the executor filed it with his attorney (where it has always remained) for the benefit of his appointees. Although it appears that notice of the execution of the power was given to some of the interested parties, it seems to me that immediate publication was not essential and that notification of execution was not required to be given prior to the time the executor was prepared to put the appointees in possession of the shares allotted to them.
For complainants and some of the defendants it is argued that it was decedent's intention that his executor should reduce the assets of the estate to cash promptly after decedent's death and then, and not until then, make distribution; that since the executor had not reduced the estate to cash up to the time of his discharge his attempt to exercise his power to distribute, made ten years after decedent's death, is ineffectual and that the estate should be distributed according to the statute of distribution, among decedent's next of kin who survived him.
The decedent's direction to his executor was to convert his estate into cash whenever and as soon after his decease as the executor in his judgment and discretion might consider it proper for the best interest of the residuary estate. The decedent died twelve years after executing his will and at a time when the real estate and securities market was greatly depressed, an economic and financial situation which continued to the time the executor was discharged. The estate amounted to approximately half a million dollars and consisted mainly of bonds and shares of stock in cemetery and real estate holding corporations, unsecured indebtedness due from such corporations and some real estate. Much of the money the executor realized from such assets as he was able to convert into cash (he received $425,000 from sales made in 1930 of shares in one cemetery corporation) he loaned to various corporations in which what he called the "Walker family," was interested. He seems to have believed that by holding assets for a better market and in making loans of cash which came to his hands, he was acting in the estate's interest and safeguarding it until better times when he could *Page 502 
deliver it not only without loss, but enhanced in value, to those entitled to receive it. When he accounted to the orphans court in 1936 that court found on exceptions to his account, that although he should be surcharged for losses sustained through mismanagement of the estate, he had not acted fraudulently or for his own personal profit. A result, however, was his discharge as executor on his own petition and he had become so involved financially that a petition in bankruptcy was filed against him in August, 1936, and he was adjudged a bankrupt.
Even if the residuary estate had not been wholly converted into cash, and it would seem that such estate could not be distributed in full until after the life interest of Ida Walker under the third clause of the will (referred to hereafter) had terminated, I think that the situation should not defeat the decedent's intention with respect to the distribution of his residuary estate which was that it should not go to all his heirs-at-law or to all his next of kin who might survive him, but to certain of them. Apparently he had great confidence in his executor and instead of himself directing which of his relatives should take his residuary and in what proportions, he left the decision to his executor evidently meaning him to be guided by conditions or circumstances which might arise after he had executed his will in 1914, and intending to confide absolute discretion in his executor in that regard. I am of the opinion that the power of appointment was properly exercised as stating the executor's determination of the persons to whom and the proportions in which distribution of decedent's residuary estate should be made when the time for placing the distributees in possession of their shares arrived. Lindsley v. First Christian Society, 37 N.J. Eq. 277.
The fact that the executor waited ten years before exercising the power and that he executed it but a few weeks before his discharge as executor, does not affect my opinion. It may well be that the power of appointment was not to him as an individual and that if he failed to exercise it prior to his discharge as executor, it would lapse and the intention of the decedent would be defeated. *Page 503 
A defendant herein who is trustee in bankruptcy of the executor, contends that the executor committed a fraud on his creditors by not exercising the power of appointment so as to include himself as a beneficiary thereunder. The decedent gave no part of his residuary to any particular person. He left the final disposition of that part of his estate to the judgment of his executor, giving him wide discretion as to the persons within a specified class who should benefit by the exercise of such discretion, and until the power to appoint had been exercised, no one within that class can be said to have had a vested interest in the residue. Thomson's Executors v. Norris, 20 N.J. Eq. 489,529. I lean to the opinion that the decedent did not intend that the executor should exercise the power for his own benefit. He directed that it should be exercised for the benefit of his relatives in such manner as the executor should deem just and he placed no limit on the portion his executor might assign or allot to any relative. In conferring such an extensive power, I believe that if he had intended the donee of the power to name himself as a beneficiary, he would have said so explicitly and not having done so the executor would have been guilty of a fraud on decedent's other relatives had he attempted to take a benefit for himself. Thomson's Executors v. Norris, supra (at p. 527);Morse v. Hackensack Savings Bank, 47 N.J. Eq. 279, 286;Capron v. Luchars, 110 N.J. Eq. 338, 344. However, under the discretion given by decedent to his executor, the latter had the same right to exclude himself as a beneficiary as he had to exclude other of decedent's relatives and if he exercised such right without fraudulent intent toward his creditors, his trustee in bankruptcy has no ground for complaint. Fraud is never presumed but must be proved by clear and positive evidence (Firemen's Fund Insurance Co. v. Nicholson, 103 N.J. Eq. 32;affirmed, Ibid. 375), and no evidence of fraud is found in the executor's act.
I conclude that the executor duly exercised the power of appointment given him by the ninth clause of decedent's will and that each of the persons designated in the instrument he executed April 24th, 1936, took a vested interest in decedent's residuary estate in the proportions assigned or *Page 504 
allotted to them by that document, against which shares should be charged any sums which the executor had advanced to them from the residuary.
Special reference should be made to the share the executor allotted to decedent's sister Ida Walker. She survived the decedent and died after the execution of the power of appointment, at a date not disclosed by the evidence. The third clause of decedent's will directs that $15,000 be set aside in trust to invest; that the income therefrom be paid to Ida Walker for life and that after her death the corpus of the trust should become part of decedent's residuary estate and be disposed of in the same manner as the residuary. Five other clauses of decedent's will make provision for other relatives of decedent and there is no indication in the will that those relatives to whom the decedent gave specific legacies should be ignored by the executor when he came to exercise the discretion given him to make distribution among relatives who should survive decedent; in fact the executor did appoint a share in the residuary to some of such legatees. Notwithstanding that Ida Walker was given a life estate in a particular portion of decedent's residuary, which portion could not actually be distributed among any of decedent's relatives until after her death, I think that under the broad terms of the power of appointment given decedent's executor, the executor had discretion to allot to Ida Walker not only a share in the balance of decedent's residuary, but also a share in the remainder of the trust in which she was given a life interest. One to whom a life interest is given by will may nevertheless be entitled to a share in the remainder, depending on the context of the will and the surrounding circumstances. Hard v. Turnure,39 N.J. Eq. 121; Tuttle v. Woolworth, 62 N.J. Eq. 532; In reBuzby, 93 N.J. Eq. 411; reversed on other grounds, 94 N.J. Eq. 151; In re Hubert, 98 N.J. Eq. 35; affirmed, 99 N.J. Eq. 886;Brown v. Fidelity Union Trust Co., 126 N.J. Eq. 406, 420. *Page 505