On or about July 28th, 1935, Catherine Moloney (also known as Catherine Maloney), died. Her last will and testament was admitted to probate by the surrogate of Bergen County, and letters testamentary were issued to her daughter, Mary Mahon, who is named executrix. The will among other things provided that the sum of $1,000 be paid to her sister, Johanna Doyle, the sum of $500 to a nephew, James Doyle, the sum of $500 to a nephew, Martin Stapleton, and the sum of $500 to a nephew, Stephen Doyle, Jr.
The sixth paragraph of her will provided:
"I hereby give, devise and bequeath unto my beloved daughter, MARY MAHON, the two (2) family brick house on 108th Street, Corona, Borough of Queens, City and State of New York; the one (1) family frame house and the two (2) lots upon which it is situated in Lindenhurst, Suffolk County, New York; the lot and two (2) bungalows situated thereon at Fourth Street, Midland Beach, Staten Island, New York; my plot of land comprising approximately Fifteen thousand (15,000) square feet at Syosset, Town of Oyster Bay, Nassau County, State of New York; the three (3) story brick house in which I live at No. 332 West 18th Street, New York City, New York, and any and all other property, real, personal or mixed, wheresoever the same may be located, absolutely and without limitation, except however, that the bequests which I have heretofore made in this Will shall be paid out of this property by my Executrix hereinafter named, at a time when in the best judgment of my Executrix she deems it advisable to sell said property or any part thereof, for the purpose of paying off said legacies. If however, at the time of my death there is sufficient cash on hand with which to pay said legacies after the payment of all expenses, the same shall be paid out of the cash, and these legacies shall not then be a lien or charge on the real estate."
Stephen Doyle, Jr., was declared an incompetent on or about August 15th, 1935.
The complainants and the guardian ad litem for Stephen Doyle, Jr., contend that their legacies under the will bear interest beginning one year after decedent's death. This contention the defendant executrix opposes.
An account filed by the executrix in the Bergen County Orphans Court on December 31st, 1936, shows that there was no money or personal property in the estate that could be converted into cash to pay the debts. *Page 235 
The executrix testified that prior to July 27th, 1945, she did not have sufficient money to pay any of the testamentary bequests.
The real estate mentioned in the will was shown to be in a bad, poor, run down state. It was undesirably located. From the time the executrix acquired it the realty market was in an inactive and depressed condition. The executrix testified she made every reasonable effort to sell the property but met with no success until on or about July 27th, 1945, when she procured a purchaser for the Lindenhurst property, the best parcel among the estate's realty. It brought $4,300. That sum enabled her to pay the bequests. She then and there offered the legatees the amount of their legacies, but they refused her tender unless interest was added from the end of one year after the death of the testatrix. However, she, the executrix, gave a certified check to the attorney of the committee of the incompetent Stephen Doyle, Jr., in payment of his bequest.
The income from the properties was just about enough, and no more, to meet the expenses for taxes, interest on mortgages, repairs and other incidental expenses. This condition appears to have been revealed in the intermediate accounts and by informal accounts declared to have been furnished from time to time to the solicitors for the complainants and other interested parties.
The complainant Johanna Doyle, in 1944, obtained a rule to show cause in the Bergen County Orphans Court why the defendant executrix should not be removed because the properties had not been previously sold. The proceeding did not result in her removal. From the evidence submitted I am convinced that the defendant executrix sincerely endeavored to avoid financially sacrificing the properties, and continued her efforts to obtain a figure for the realty which would at least meet the amount of the bequests.
Certainly, in the period prior to the time of the sale of the Lindenhurst property on July 27th, 1945, the realty market was at a very low ebb, sales were few and far between. It is my opinion that the adverse economic conditions justified the *Page 236 
defendant executrix in retaining the properties until such time when a reasonable sum, or a fair value, could be obtained.
While the general rule is that an executor shall have one year after the grant of letters to pay and satisfy legacies given by will, unless the will otherwise directs, the exception is that interest on the legacy begins when the legacy is demandable as indicated by the rule laid down in the case of Trust Company ofNew Jersey v. Glunz, 121 N.J. Eq. 593; 191 Atl. Rep. 795. TheGlunz Case cites with approval the case of Christian v.Catholic Church of St. John the Baptist, 91 N.J. Eq. 374;110 Atl. Rep. 579, which holds that:
"Interest will not be allowed on the legacy in view of the provision of the will that payment of the legacy was to be at such time as the executors deem proper. Interest does not begin to run on a legacy until the right to receive it arrives."
The bequests in the testatrix' will were directed to be paid "at a time when in the best judgment of my Executrix she deems it advisable to sell said property or any part thereof for the purpose of paying off said legacies." The evidence indicates that she exercised her "best judgment" in disposing of the property at the time indicated — approximately ten years after the death of the testatrix.
In the case of Lundie v. Walker, 126 N.J. Eq. 497;9 Atl. Rep. 2d 783, it was held that where the will directs the executor to convert the estate into cash as soon after decedent's death as his executor may consider proper and thereafter to make distribution, the exercise of the power ten years after the decedent's death was a proper exercise of the power considering the depressed economic conditions of the time.
The provision in the will clearly vests the executrix with power to decide when in her judgment the property should be sold "for the purpose of paying off said legacies." I feel that the language used by the testatrix in her will is more emphatic than the expressions used in the will mentioned in Christian v.Catholic Church of St. John the Baptist, supra. In In reShort's Estate, 87 N.J. Eq. 276; 99 Atl. Rep. 609, cited by complainants, the discretion there given to the executrix was a direction that the property be sold within three *Page 237 
or five years at any time which the executrix deemed best for the interest of the estate. That limitation was a direction which required the executrix to act within the time limited upon which she had no discretion or judgment. I see no similarity between the situation in In re Short's Estate, supra, and the case under consideration.
There is no evidence here to show that the defendant executrix abused her discretion in the sale of the property. I was impressed with her testimony to the effect that she exhausted every effort to sell the real estate for the purpose of paying off the legacies, and the difficulty she thereby encountered. I cannot close my eyes to the fact that over the period she held the property there was a long depressed real estate market, and that the then prevailing conditions made it practically impossible to sell real estate at a fair value.
I feel that the defendant executrix should not be required to pay interest on the legacies. *Page 238