This suit involves the construction of two wills; the first that of Susan E. Urie, who died a resident of Monmouth county, New Jersey, on July 23d 1918, and the second, that of Mary T. Sheldon, who died a resident of New York on September 15th, 1935. The bill also seeks the removal of all proceedings touching the Urie estate from the Monmouth county orphans court to this court; an injunction against the trustees and their representatives from proceeding with their final accounting of that estate in the Monmouth county orphans court; an accounting of the corpus and income of the Urie estate from the Fidelity Union Trust Company, the surviving trustee, and full discovery of the details of the trustees' investments and transactions covering the entire period of the administration of the Urie estate.
Although the construction of the two wills is involved in this proceeding, I think its primary purpose is to surcharge the surviving trustee and the estates of the two deceased trustees with anticipated losses from alleged illegal investment of trust funds. *Page 409 
After making a number of specific bequests for general legacies, Susan E. Urie by her will provided as follows:
"Fourteenth: All the rest, residue and remainder of my estate, both real and personal, of whatever the same may consist and wherever the same may be situate, I give, devise and bequeath unto my sister, Mary T. Sheldon, of New York, Dr. James F. Ackerman, of Asbury Park, New Jersey, and Fidelity Trust Company, a New Jersey corporation located in the City of Newark, New Jersey, and the survivors and survivor of them, to have and to hold the same upon the following trust; to invest and reinvest the same and to pay the net income therefrom, semi-annually, unto my sister, Mary T. Sheldon, for and during the term of her natural life.
"Fifteenth: At and after the death of my said sister, Mary T. Sheldon, I direct my said executors and trustees, hereinafter named, the survivors and survivor of them, out of the corpus of my estate to make the following payments which I give and bequeath: To Mary Wade the sum of Ten Thousand Dollars, and to Eugenie Maroney the sum of Ten Thousand Dollars, which bequest is in addition to the legacy herein given to her in the Fifth paragraph of this my Will; if either the said Mary Wade or Eugenie Maroney should predecease my said sister, Mary T. Sheldon, then I direct that the survivor of them shall receive both of said legacies of Ten Thousand Dollars; to my cousin, Sarah Brown, wife of Elmer W. Brown, of Northfield, New Jersey, the sum of Five Thousand Dollars; to my cousin, Levinia Fryer, the sum of Five Thousand Dollars; to my cousin, Delia Knight, the sum of Five Thousand Dollars; to the Woodland Cemetery Company of Philadelphia, the sum of Four Hundred Dollars to be used for the perpetual care and maintenance of the S. Townson lot in Section F of said Cemetery; and I order and direct, after the burial of my said sister and myself therein, that the said lot be securely sealed so that no bodies can thereafter be interred therein.
"The above bequests to Mary Wade, Eugenie Maroney, Sarah Brown, Levinia Fryer and Delia Knight in this Fifteenth paragraph contained are to lapse as to any of them not surviving my said sister, Mary T. Sheldon, except as otherwise provided in said paragraph for the legacies to Mary Wade and Eugenie Maroney respectively.
"Sixteenth: From and out of the residue of my estate, after the death of my said sister, Mary T. Sheldon, and the payment of the legacies above directed, I give and bequeath to my said executors and trustees, or the survivors and survivor of them, so much thereof as in their judgment shall be necessary, when invested in income-bearing securities, to produce sufficient net annual income to pay the following annuities: To Mary E. Rowse the sum of Four Hundred Dollars per year, payable quarterly, for and during the term of her natural life, in addition to the legacy hereinbefore given to her; should Benjamin Haines survive the said Mary E. Rowse, then to pay to the said Benjamin Haines, after the death of the said Mary E. Rowse, the sum of Two hundred dollars per year, in equal quarterly payments, for and during the term of his natural life; to Catherine Cantlin, *Page 410 
the sum of Two Hundred Dollars per year, payable quarterly, for and during the term of her natural life, in addition to the legacy hereinbefore given to her.
"Seventeenth: I hereby authorize and request my executors and trustees to retain in their employ as secretary, bookkeeper, or in whatever capacity she may be needed, Miss S. Josephine Johnston, at a salary of Six Hundred Dollars per year, payable monthly, so long as in their judgment her services are required, and at and after the termination of her services as aforesaid, then I give and bequeath to the said S. Josephine Johnston the sum of Four Hundred Dollars per annum, payable quarterly, for and during the term of her natural life.
"Eighteenth: All my property, both real and personal, of whatsoever constituted and wheresoever situated, not disposed of in and by this my Last Will and Testament, I hereby give, devise and bequeath to such person or persons, association or corporation, as my beloved sister, Mary T. Sheldon, shall nominate and appoint to receive the same in and by her last Will and Testament."
Mrs. Urie left surviving as her only next of kin, her sister, Mary T. Sheldon. By item "Thirteenth" of her will, Mary T. Sheldon provided as follows:
"Thirteenth: I give and bequeath to said The Farmers' Loan and Trust Company a sum which, in its judgment, will be sufficient, after paying out all expenses and charges of administration, to yield a net income of four hundred dollars per year, such fund, if possible, to be taken from the money or securities received from the estate of my deceased sister, Susan E. Urie; said sum to be held IN TRUST, invested and reinvested, my said Trustee to collect and receive the issues and profits thereof and to apply the net income therefrom, whether more or less than four hundred dollars per year, to the use of Sarah Josephine Johnston (formerly Secretary to my sister, Susan E. Urie), during the term of her natural life, and upon the death of said Sarah Josephine Johnston the principal of said trust fund shall fall into and become a part of my residuary estate."
The City Bank and Farmers' Trust Company, of New York, was appointed executor of the Sheldon will.
By the first codicil to her will, said codicil being dated April 18th, 1923, Mary T. Sheldon provided, in part, as follows:
"Fourth: By virtue of the authority conferred upon me under Clause Eighteenth of the will of my sister, Susan E. Urie, late of the Borough of Spring Lake, in the County of Monmouth and State of New Jersey, I hereby nominate and appoint the following persons and corporations to receive the property, both real and personal, of my said sister, in said clause of her said will mentioned, and I hereby dispose of said property as follows:" *Page 411 
(For the sake of brevity, the various bequests under this item are tabulated as follows:
Fifth Avenue Hospital, New York City ........................ $29,000
(Increased by a second codicil to ........................... 59,000)
Sarah Brown (one of the complainants herein) ................ 2,000
Delia Knight ................................................ 2,000
Thomas McAleer .............................................. 2,000
Susan Neidler ............................................... 2,000
"To any other first cousin on my mother's side" ............. 2,000
Ann May Memorial Hospital ................................... 10,000
Rev. James Palmer ........................................... 5,000
Monmouth Memorial Hospital .................................. 10,000
Home for Aged and Infirm Colored Persons .................... 1,000
Society of New York Hospital ........ "Rest, residue and remainder" of
 estate of Susan E. Urie)

By the second codicil to her will Mary T. Sheldon provided, in part, as follows:
"Sixth: I hereby revoke the bequest of Twenty-nine Thousand Dollars to the Fifth Avenue Hospital contained in Clause Fourth of my said Codicil and in lieu of the provision I substitute the following to be read in said Clause Fourth:
"`I give and bequeath to the Fifth Avenue Hospital situated at 105th and 106th Streets and Fifth Avenue, Borough of Manhattan, City, County and State of New York, the sum of Fifty-nine Thousand Dollars, which with the One Thousand Dollars I have already paid to said Hospital for such purpose shall be employed to endow Room No. 428 and one other room in said Hospital in perpetuity, in loving memory of my mother and sister, each of the rooms to be known as the "Susan Townson Urie Room." My friend Louise A. Webb shall have the right during her lifetime to designate patients to occupy said rooms.'
"Seventh: Referring to Clause Fourteenth of my said Will and the bequest of the Society of the New York Hospital set forth in Clause Fourth of the said First Codicil to my Will it is my wish that in the employment of the income from said funds so much as possible shall be used by said Hospital for the benefit of the Campbell Cottages for Convalescent Children at White Plains, New York, as I am very deeply interested in the work which is being carried on in said cottages."
The three executors and trustees of the Urie will acted as such until the death of Mrs. Sheldon on September 19th, 1935. Dr. Ackerman continued to so act until his death on August 5th, 1936. The Fidelity Union Trust Company is *Page 412 
the surviving trustee. All of the legacies given by Mrs. Urie's will, including those payable out of the residue after the death of Mrs. Sheldon, were paid in due course. The first account of the executors of the Urie will was filed on December 30th, 1919, and approved by decree of the Monmouth county orphans court on January 22d 1920. The first intermediate account of the trustees was filed on January 25th, 1923, and approved by decree of the Monmouth county orphans court entered on February 15th, 1923. The second intermediate account of the trustee was filed on February 15th, 1927, and approved by decree on March 10th, 1927. In that account the trustees listed as a part of the assets of the estate certain "participations" in mortgages in amounts ranging from $1,000 to $23,500 and totaling $61,200, indicating the mortgages in which said participations were held by the name of the mortgagor.
The third intermediate account of the trustee was filed on March 4th, 1935, and approved by decree of the Monmouth county orphans court on April 25th, 1935. In that account the trustees listed as a part of the assets of the estate under the heading of "Mortgages" certain participations in mortgages aggregating $117,200. The total corpus of the estate at that time was fixed at $220,506.23, and there was a balance of income in the hands of the trustees amounting to $1,431.67.
The final account of the trustees under the Urie will was filed June 13th, 1936. This account showed a balance of corpus
amounting to $219,622.89, and a balance of income of $1,084.80. The same mortgage investments listed in the previous accounts were re-listed in this account. Exceptions to the trustees' final account were filed in the Monmouth county orphans court by the complainant Brown, one of the legatees under the Urie will and an appointee of the will of Mary T. Sheldon, deceased, pursuant to the power of appointment contained in the Urie will. The defendants Fifth Avenue Hospital and Monmouth Memorial Hospital Association, other appointees under the will of Mary T. Sheldon, deceased, have also filed exceptions to said final account. Subsequently, the complainant Brown petitioned the Monmouth county orphans *Page 413 
court for the opening and vacating of the decrees of that court approving the trustees' second and third intermediate accounts, claiming to have had no notice of the filing or consideration of said accounts in that court.
In the numerous exceptions to the trustees' final account and the petition to open and vacate the decrees approving the second and third intermediate accounts are charges of breach of trust in the investment of funds of the estate in mortgage participation certificates issued by the Fidelity Union Title and Mortgage Guaranty Company, in which company it is alleged that the Fidelity Union Trust Company, one of the trustees, had a substantial stock interest and which, it is alleged, made investment in said mortgage participation certificates illegal. Proceedings in the Monmouth county orphans court resulted in a reference to a master, who, after a long period of inaction resigned, and thereupon this bill was filed, the complainants seeking the transfer of all proceedings in connection with the Urie estate from the Monmouth county orphans court to this court and the trial and determination of the issues raised by the exceptions to the final account, the petition to vacate the decrees approving the second and third intermediate accounts, and the charge of breach of trust, here. Upon the filing of this bill all parties in interest were directed to show cause why such proceedings should not be transferred to this court, and after hearing arguments on the return of that order an order was entered transferring said proceedings to this court. Subsequently, appropriate pleadings were filed by the respective parties framing the issues now presented to the court and the cause was duly set down for final hearing.
The complainants are Sallie Ann Brown, a legatee under the Urie will and one of the appointees of Mrs. Sheldon pursuant to the power, and Roy R. Knight, the son of Delia Knight, who was also one of Mrs. Sheldon's appointees but who predeceased Mrs. Sheldon.
The defendants are the Fidelity Union Trust Company, the surviving trustee of the estate of Susan E. Urie, deceased; City Bank and Farmers' Trust Company, executor of the will *Page 414 
of Mary T. Sheldon, deceased, executor and trustee of the estate of Susan E. Urie, deceased; The Provident Trust Company, of Philadelphia, Pennsylvania, executor of the last will and testament of James F. Ackerman, deceased executor and trustee of the estate of Susan E. Urie, deceased; Fifth Avenue Hospital of the city of New York; Susan Neidler; Raleigh Fitkin-Paul Morgan Hospital and Ann May Memorial Foundation; Rev. James Palmer; Monmouth Memorial Hospital Association; The Home for Aged and Infirm Colored Persons; Benjamin Haines; The Society of the New York Hospital; Marie Helen Riehl; John Blankin, surviving executor of Thomas S.T. Macleer, deceased; Charlotte Lamon; Warren A. Macleer; John W. Macleer, Jr., and Robert S. Hamilton, executor of the last will and testament of Albert Macleer, deceased.
All of these defendants, except the surviving trustee under the Urie will and the representatives of the deceased trustees, are appointees of Mrs. Sheldon, or their representatives, or next of kin.
Prior to final hearing, counsel for the City Bank and Farmers' Trust Company, executor of the will of Mary T. Sheldon, one of the deceased trustees, moved the court, on notice, for an adjudication prior to final hearing on several issues raised by the first, second and fourth separate defenses of its answer to the bill, and the first and fourth separate defenses to its answer to the counter-claim of the Monmouth Memorial Hospital Association and James Palmer, two of the defendant appointees of Mary T. Sheldon, and also for a final decree construing the will and judicially settling and allowing the final account filed on behalf of this deceased trustee; the surviving trustee, and the defendant Provident Life and Trust Company, executor of Dr. Ackerman, another of the deceased trustees, joined in this motion.
After hearing extended oral arguments of all counsel who desired to be heard on the motion, I felt that it would be more expeditious and advantageous to dispose of some of the legal issues raised by the pleadings before considering exceptions to the trustees' final account and the objections to the *Page 415 
challenged items of the second and third intermediate accounts upon their merits, and accordingly granted said motion, staying further proceedings pending disposition of these issues.
The first, second and fourth separate defenses involved on this motion, as contained in said answer, are as follows:
 "First Separate Defense
"12. Under the terms of the will of Susan E. Urie, deceased, her residuary estate was bequeathed to trustees to be held for the benefit of Mary T. Sheldon during the term of her natural life. Upon her death, after the payment of certain specific bequests out of said property, the residue of said fund was bequeathed as follows:
"`Eighteenth: All my property, both real and personal, of whatsoever constituted and wheresoever situated, not disposed of in and by this my Last Will and Testament, I hereby give, devise and bequeath to such person or persons, association or corporation, as my beloved sister, Mary T. Sheldon, shall nominate and appoint to receive the same in and by her Last Will and Testament.'
"By virtue of the failure to provide a gift over in the event that Mary T. Sheldon did not exercise the power of appointment provided for in paragraph Eighteenth, the said Susan E. Urie died intestate as to the remainder interest in said fund in such event, and the said Mary T. Sheldon, as her sister and sole next of kin, was therefore the vested remainderman of said fund. The estate of the said Mary T. Sheldon in said fund was therefore tantamount to a fee, and those taking the same under or through her, or by virtue of her last will and testament, including the complainants herein, are estopped and barred from questioning her acts and transactions with regard to said property during her lifetime.
 "Second Separate Defense
"13. The complainant Roy R. Knight has no interest in the estate of which Susan E. Urie died seized and possessed, *Page 416 
or in the said trust fund, and is therefore not entitled to a discovery or to maintain this proceeding. The interest of Sallie Ann Brown is limited to $2,000, and, as the bill of complaint does not allege that the estate is insufficient to pay the said sum of Sallie Ann Brown, she is not entitled to a discovery, or to maintain this proceeding.
 "Fourth Separate Defense
"15. The complainants are bound by the decrees of the Monmouth county orphans court dated, respectively, January 22d 1930, February 15th, 1923, March 10th, 1927, and April 25th, 1935, judicially settling the accountings of Fidelity Union Trust Company, Mary T. Sheldon and James F. Ackerman, as executors of and trustees under the will of Susan E. Urie, deceased, and the said decrees are res adjudicata as to the rights of the complainants in the subject-matter of the said accountings."
The first and fourth defenses to the counter-claim of the Monmouth Memorial Hospital and James Palmer are identical to those similarly numbered above.
These defenses, and the issues raised by this motion, obviously involve judicial construction of both wills. The right of the complainants to maintain this bill, and of the exceptants to challenge the trustee's accounts, can be determined only by such construction, and these issues will therefore be disposed of in the following order:
1. Did Susan E. Urie die intestate as to any portion of her estate?
2. What estate vested in Mary T. Sheldon (a) under the Urie will, (b) by intestacy?
3. Of what character is the power of appointment given Mary T. Sheldon by paragraph "Eighteenth" of the Urie will?
4. Was the power properly exercised by the donee?
5. Was the annuity to Sarah Josephine Johnston by clause "Thirteenth" of the Sheldon will given in partial exercise of the power of appointment in the Urie will? *Page 417 
6. Is the fund to purchase the Johnston annuity under the Sheldon will to be set up out of the Urie trust fund in preference to legacies to other appointees?
7. Has the complainant Roy R. Knight any standing to maintain this bill or except to the trustee's accounts?
8. Has the complainant Sallie Ann Brown any standing to maintain this bill or except to the trustee's accounts?
9. Has the court of chancery jurisdiction to vacate the challenged decrees of the Monmouth county orphans court?
10. Are the decrees of the Monmouth county orphans court approving the several trustee's accounts binding upon the appointees of Mary T. Sheldon?
11. Are such appointees estopped to challenge Mary T. Sheldon's acts as one of the trustees under the Urie will?
12. Does such estoppel, if any, apply also to Mrs. Sheldon's co-trustees?
 1. DID SUSAN E. URIE DIE INTESTATE AS TO ANY PORTION OF HER ESTATE?
A study of Mrs. Urie's will indicates that she attempted to dispose of her residuary estate by clauses "Fourteenth" to "Eighteenth." By the "Fourteenth" clause the residue is left to three trustees in trust to pay the net income to her sister, Mrs. Sheldon, for life. It is clear from the language of that clause that no gift over of the remainder of the corpus is made after the termination of the life estate. If there was no further disposition of the remainder of the corpus of this trust, it is equally clear that it would vest in the heirs-at-law or next of kin of testatrix immediately upon her death. Westfield TrustCo. v. Beekman, 97 N.J. Eq. 140; affirmed, 99 N.J. Eq. 435;Franklin v. Silvers, 2 N.J. Mis. R. 583; Skellenger's Ex'rs v.Skellenger's Ex'r, 32 N.J. Eq. 659; Den, ex dem. Holcomb v.Lake, 24 N.J. Law 686; affirmed, 25 N.J. Law 605; Smith v.Smith, 54 N.J. Eq. 1; affirmed, *Page 418 55 N.J. Eq. 821; Camden Safe Deposit and Trust Co. v. Guerin,89 N.J. Eq. 556; In re Buzby, 94 N.J. Eq. 151.
In Westfield Trust Co. v. Beekman, supra, Vice-Chancellor Fielder, speaking for the court, said:
"This is a valid gift of income for life to the beneficiaries named and is not invalid, because the will fails to make provision for the disposition of the corpus from which such income is derived. As to such corpus the testator died intestateand the same will pass to his heirs-at-law and next of kin, thetrustees holding it for those entitled." (Italics mine.)
In Franklin v. Silvers, supra (at p. 584), Vice-Chancellor Buchanan said:
"The will gives the income to the widow for life, and so much of the principal as she might need, with certain legacies payable after her death and the power to dispose of the balance thereof by will. This was not exercised. The balance, therefore, goes, not to the widow's legal representatives, but by intestacy to the representatives of testator."
That case is practically on all fours with the instant case, differing only by the fact that there the life tenant failed to exercise the power, while here Mrs. Sheldon did exercise the power. Had she failed to do so the entire residue would have passed to her (estate) by intestacy of the testatrix.
In the Skellenger Case, supra, the trust was for the benefit of the widow with direction to pay certain pecuniary legacies after her death, and thereafter a failure to dispose of the ultimate residue. There were three different claimants; the executors of the will of the creator of the power, his next of kin, and the representatives of the widow life tenant. It was held that there was an intestacy and that the next of kin, as determined by the statute of distributions in effect on the date of death of the creator of the fund, would take; and that the trustee took the undisposed-of portion in trust "for those who are entitled under the statute of distribution" (p. 661). The court further said (at p. 662):
"The income of this fund passed by the will, but no beneficial interest in the corpus itself. As to that the will is silent *Page 419 
and inoperative, and it therefore stood, on the testator's death, in exactly the same condition that it would if he had left no will. As to that, it must be declared, as a matter of law, thathe had no will. This being so, it would seem to follow, as a necessary sequence, that the widow was entitled to participate in its distribution. As a general rule, the right of thedistributees vests immediately on the death of the intestate.
But it is contended that our statute was intended to regulate distribution only in cases of total intestacy, and has no application to a case of partial intestacy. This argument, however, proves too much, for, if sound, it will exclude the next of kin quite as effectually as the widow. * * *
"It is also insisted, that the widow should not be permitted to take any part of this fund, because it is apparent upon the face of the will, that the testator intended she should not. This intention, it is said, must be inferred from the fact that he gave her the use of the whole during her life, and he could not, therefore, have intended that she should take a part absolutely. In other words, having given her a part by express words, it must necessarily be inferred that he did not intend she should have any more. This argument, it will be observed, proceeds upon the assumption that the right of distribution is to be regulated by the intention of the testator. But this, I think, is a mistake.The intention of the testator is to govern only so far as he hasdeclared it by his will. With regard to that part of his propertywhich his will did not pass, it must be declared that he had nowill, and therefore the court cannot know his intentionconcerning it. The next of kin cannot take until intestacy isfound, and then they take, not in pursuance of the testator'sintention, but by force of law, regardless of what his intentionswere." (Italics mine.)
It remains to be seen as to whether, by subsequent paragraphs of her will, Mrs. Urie disposed of this remainder.
In the "Fifteenth" paragraph of her will she made pecuniary bequests amounting to $35,400, payable out of corpus of the trust after Mrs. Sheldon's death. By the "Sixteenth" *Page 420 
clause of her will she directed that out of said corpus after the death of Mrs. Sheldon a sufficient sum be set aside to produce an annuity of $400 and by the "Seventeenth" clause she provided for another annuity of $400 payable quarterly. It will be noted that there is no gift over of these annuity funds after the death of the annuitants. By the "Eighteenth" clause of her will, Mrs. Urie disposed of all of her property not otherwise disposed of by her will "to such person or persons, association or corporation as my beloved sister Mary T. Sheldon shall nominate and appoint to receive the same in and by her last will and testament." It is therefore clear, I think, that Susan E. Urie died intestate as to the residue of her estate with respect to (a) remainder of residue after deducting legacies mentioned in paragraph "Fifteenth" and annuity funds in paragraph "Sixteenth" and "Seventeenth;" (b) remainder in annuity funds under paragraph "Sixteenth;" (c) remainder in annuity funds under paragraph "Seventeenth." These remainders vested in Mrs. Sheldon as sole heir-at-law and next of kin of Mrs. Urie immediately upon the latter's death (chapter 63, P.L. 1918; 2 Cum. Supp. Comp. Stat.p. 2628 tit. 146-169), subject, however, to divestment by the voluntary exercise of the power of appointment contained in paragraph "Eighteenth" of the Urie will. The interposition of the power of appointment did not prevent the vesting of these remainders in Mrs. Sheldon. Sandford v. Blake, 45 N.J. Eq. 248; Capron v. Luchars, 110 N.J. Eq. 338, 344; affirmed,112 N.J. Eq. 373; 2 Sugden, Powers 200; Fearne on Remainders 226;Challis, Real Property 57. They vested in her because they could "not remain locked up" during the continuance of the particular estate but "must have descended to somebody" (Holcomb v. Lake,supra), and vested not by will pursuant to the intent of the testatrix, but by operation of law. Skellenger v. Skellenger,supra. That Mrs. Urie's sole heir-at-law and next of kin and the life beneficiary of the trust created by her will were one and the same person is immaterial; nor does it matter that Mrs. Sheldon later divested herself of this estate by exercise of the power of appointment. *Page 421 
 2. WHAT ESTATE VESTED IN MARY T. SHELDON (a) UNDER THE URIE WILL, (b) BY INTESTACY?
As above indicated, and upon the authorities cited, Mrs. Sheldon became seized on the death of Mrs. Urie of a life estate in the residue of the Urie estate by virtue of clause "Fourteenth" of the Urie will. She also became seized, by operation of law, of the above mentioned remainder interests of the Urie estate. In re Leach, 112 N.J. Eq. 68. In In reThompson v. Thomas (N.Y.), 30 Misc. 152, it was held that:
"The personal estate of a person dying intestate will go to those who are his next of kin at the time of his death, and not to those who are his next of kin at the time distribution is made." And that: "The right of the next of kin to distribution of an intestate's personal property is a vested interest at the time of the death of the intestate." And see Brewster v. Gage,280 U.S. 327; Grinnell v. Howland, 100 N.Y.S. 765; Price v.McConnell (Va.), 149 S.E. Rep. 515; Singleton v. Cheek,284 U.S. 493.
Thus Mrs. Sheldon had two estates, one by will and another by operation of law. The latter was a "vested estate in inheritance." Cummings v. Cummings, 76 N.J. Eq. 568, 570. Had she died after Mrs. Urie's death and before the execution of the codicil to her will in which she exercised the power of appointment, the remainder interests in the Urie estate would have merged in her own estate and passed by her will. Or had Mrs. Sheldon refrained from exercising the power of appointment given her in clause "Eighteenth" of the Urie will, which was her privilege, the result would have been the same.
 3.
OF WHAT CHARACTER IS THE POWER OF APPOINTMENT GIVEN MARY T. SHELDON BY PARAGRAPH "EIGHTEENTH" OF THE URIE WILL?
It is contended by complainant's counsel that the power conferred upon Mary T. Sheldon by item "Eighteenth" of *Page 422 
the Urie will was a limited or particular power, in that while the donee of the power had the right to select the persons, associations or corporations among whom or which the balance of the Urie estate was to be distributed, she had no power to determine the quantum or share of the estate which should be apportioned to each of such beneficiaries; but I am unable to agree with that contention. Unless otherwise defined by statute, a power is said to be general when it is exercisable in favor of any person the donee may select; and special, limited or particular when it is exercisable only in favor of persons or a class of persons designated or described in the instrument creating the power. Powers are defined in 1 Sugden on Powers
(at p. 471), ¶ 4, as follows:
"By a general power we understand a right to appoint to whomsoever the donee pleases. By a particular power it is meant that the donee is restricted to some objects designated in the deed creating the power, as to his own children. A general power is, in regard to the estates which may be created by force of it, tantamount to a limitation in fee, not merely because it enables the donee to limit a fee, which a particular power may also do, but because it enables him to give the fee to whom he pleases; he has an absolute disposing power over the estate, and may bring it into the market whenever his necessities or wishes may lead him to do so. It has been held that such a power is within the exception in the old annuity act of estates of which the grantor is seized in fee. Therefore, whatever estates may be created by a man seized in fee may equally be created under a general power of appointment; and the period for the commencement of the limitations, in point of perpetuity, is the time of theexecution of the power, and not of the creation of it."
And (at p. 473) ¶ 5, the text reads:
"To take a distinction between a general power and a limitation in fee is to grasp at a shadow whilst the substance escapes."
See, also, 1 Tiffany, Real Property p. 1047 ¶ 315; p. 1061
¶ 320; 21 R.C.L. 773. The last sentence of the cited paragraph of R.C.L. reads as follows: "Where the donee of a power cannot exercise it for his own benefit during his lifetime, the power is not general." That statement does not express the general rule and finds support, if at all, only in the single case of Wales
v. Bowdish, 61 Vt. 23; 17 Atl. Rep. *Page 423 1000. New Jersey cases pertinent to this question are Cochran
v. Elwell, 46 N.J. Eq. 333; affirmed, sub nom., Campbell v.Cochran, 48 N.J. Eq. 307; Guild v. City of Newark, 87 N.J. Eq. 38,
in which latter case the clause conferring the power reads as follows:
"All the rest and residue of my estate I give (after the death of Alice) * * * to such person or persons, corporation or corporations, as she (Alice) shall by her last will and testament in writing appoint."
It will be noted that this language is quite similar to that used by Mrs. Urie, and it was held to confer an unlimited power.In re Skidmore's Estate, 266 N.Y.S. 312, the court considered the case of Cochran v. Elwell, supra, and (at p. 319) commented as follows:
"The chancellor made no comment on the quantum of property appointed. He apparently took for granted that authority inhered in the power to make this discrimination."
See, also, Maynard v. Farmers Loan and Trust Co.,197 N.Y.S. 527; 203 N.Y.S. 83; 144 N.E. Rep. 905; Thompson's Estate,213 N YS. 422; 217 N.Y.S. 865; 157 N.E. Rep. 859, and Matter ofTerwilliger's Will, 237 N.Y.S. 390; 243 N.Y.S. 898, in all of which the power was conferred by language similar to that in the Urie will and in its exercise the property subject to the power was disposed of to various appointees in varying amounts. See, also, Johnston v. Commissioner of Internal Revenue,76 Fed. Rep. 2d 55; Lee v. Commissioner, 61 App. D.C. 33;57 Fed. Rep. 2d 399, 401; Lyon v. Alexander (Pa.),156 Atl. Rep. 84; In re Perkins' Estate (Pa.), 170 Atl. Rep. 255. The following language of the Pennsylvania supreme court in Lyons
v. Alexander, supra, is quite apropos here:
"Much learning and research has been expended in the briefs by the able advocates on each side in a discussion of the distinctions between various kinds of powers of appointment, general powers, special powers, powers in gross, general testamentary powers in gross, special testamentary powers in gross, powers appendant, powers appurtenant, special collateral powers and general collateral powers. We think it *Page 424 
profitless to review the cases defining the various kinds of powers or to enter upon even a summary of the distinctions which have been drawn. For all practical purposes there may be said to be two marked differences in powers of appointment; they can be summarized as general and special powers. The general are those in which the donee of the power may appoint to anyone, and the special, in which the donee of the power is restricted to passing on the property to certain specified individuals or to a specific class of individuals. In the latter case, there is a sound reason why the repository of the power should not be permitted to estinguish it, because the testator has indicated the persons to whom the property shall go, and there is reposed in the appointee of the power a confidence, something partaking of the nature of a trust; but where the power is a general one, under which the donee may appoint to any one, the testator has completely relinquished all dead hand dominion over the property, and has placed it for all practical purposes as completely within the control of the donee of the power as though a fee had been created in him. There is neither a trust nor an obligation in the nature of a trust, because the power is not coupled with a duty. Recognition of the right to extinguish a general power of appointment began as early as the decision of Lord Coke inAlbany's Case (1585), 1 Coke's Reports 107A, and has been the doctrine in England substantially from that time to the present."
In my opinion, the power conferred upon Mary T. Sheldon by item "Eighteenth" of the Urie will is a general and unlimited power.
 4. WAS THE POWER PROPERLY EXERCISED BY THE DONEE?
It is contended by counsel for the complainant that the power of appointment was improperly exercised by Mrs. Sheldon in that while she had the right to nominate the persons to receive the property subject to the power of appointment, she was not privileged to fix the quantum of the estate given to *Page 425 
each of her appointees; but in my judgment, the power being a general and unlimited one, Mrs. Sheldon had the right not only to select the appointees, but also to fix the quantum of the estate which should go to each in such amounts as she chose. Complainant's argument is based upon a misapplication of the rule respecting illusory appointments. That rule is stated in21 R.C.L. tit. "Powers" 806 § 41, as follows:
"From the common law rule as to the non-exclusive nature of powers in favor of a class named, stated in the preceding paragraph, arose the doctrine of illusory appointments. While the donee of a power was required to execute it in favor of all the members of the class for whose benefit it was created, yet at law it was immaterial how substantial the appointment was, if all were provided for in the appointment. Courts of chancery, however, at an early date interfered with an appointment of a merely nominal sum as a share, on the ground that a fraud had been perpetrated on the donor of the power. They held such an appointment illusory and invalid. At first the courts interfered in all cases unless the shares were equal, but subsequently this practice was abandoned and the court interfered only where the share appointed was merely nominal. In England where the doctrine of illusory appointments originated it has frequently been condemned, and it was there abrogated by statute in 1830. It has also been condemned in this country, and has been rejected by some courts, though other courts have adopted it. Even under the common law doctrine an appointment to a husband for life with remainder to the wife, if she survived, was held not illusory as to the wife, as her husband in any event would be entitled to the usufruct for life."
And in 1 Tiffany on Real Property 1094 ¶ 328, the rule is stated as follows:
"Illusory Appointments. — Under the doctrine of `illusory' appointments, it was formerly the rule in England that, where one had a `non-exclusive' power, — that is, a power of appointing among all the members of a class, as, for instance, to all one's children, — equity would regard an appointment of a merely nominal share to one of such class as invalid, and would require a substantial share to be given him. This doctrine has been repudiated by some courts in this country, it being considered that the claim of each of the objects is satisfied if there is any appointment to him, however small the share, while by other courts it is apparently recognized.
"The doctrine referred to, having been found to be exceedingly unsatisfactory by reason of the difficulty of ascertaining, without a resort to litigation, what was a merely nominal and what a substantial share, was abolished in England by a statute, providing that no appointment should be invalid by reason of the smallness of the share *Page 426 
appointed in favor of any of the objects of the power. This statute was subsequently repealed by another statute in effect making every power to appoint among several objects an exclusive power, that is, a power authorizing an appointment which excludes one or more of such objects unless the amount of the share from which no member of the class shall be excluded is expressly stated in the instrument creating the power. In several states likewise the statute provides that when by the terms of the power the property is to be appointed among a class in such manner and proportions as the donee sees fit, he may allot it to one or more to the exclusion of others."
See, also, 49 Corp. Jur. tit. "Powers" 1300 ¶ 134:
"Illusory appointments. — In furtherance of the rule that a non-exclusive power of appointment among two or more persons must be so exercised, if at all, as to give each object a share or portion of the subject-matter, it has been held in some jurisdictions that such a power cannot legally be exercised except by giving to each object a beneficial interest or share in the property fairly proportioned to the whole, although not necessarily equal to the shares of the others, and that the appointment of a merely nominal share is illusory and void in equity, although good at law, unless the appointee thereof has been otherwise provided for by the donee. In other jurisdictions, however, where the doctrine of illusory appointments has been repudiated or has never been recognized, and, in England, since the passage of a statute providing that no appointment shall be invalid on the ground of being illusory, a nominal or unsubstantial appointment is valid."
The doctrine of illusory appointments has no application whatever to the power contained in the Urie will. That doctrine is applicable, if at all, only in the case of non-exclusive powers, and it has been adopted in this country only by the State of Kentucky. In no other state of the union, so far as I can find, has any court declared an appointment invalid on the ground that it was illusory. See L.R.A. 1916D 498 p. 505. See, also, notes, 100 A.L.R. 343 (at p. 351), where it is stated:
"It is beyond question that the illusory appointment doctrine is only applicable to the exercise of non-exclusive powers.
"In Kentucky alone, of the states of the Union, has the illusory appointment doctrine been definitely adopted and applied."
But even where the power is non-exclusive, the New Jersey cases hold that the donee of the power may discriminate amongst the appointees in respect to the quantum of the *Page 427 
estate given. In Wright v. Wright (Court of Chancery,1886), 41 N.J. Eq. 382, testator, by his will, gave all his property to his wife for life "and at her death may by will dispose of the same between my children and grandchildren as she may think proper." The wife died, leaving a will which did not expressly exercise the power of appointment. However, she had no real estate of her own upon which a devise which she made could operate. The wife divided the residue of the estate into six parts and gave one part to each of her three daughters or to their respective descendants; she gave one share to her granddaughter, Frances, or her descendants; a half share to each of two named grandchildren or to the descendants of each and a half share to two other grandchildren or to the descendants of each of them. In holding that the power of appointment had not been validly exercised, Chancellor Runyon said (at p. 387):
"Under the terms of her husband's will, the testatrix was not at liberty to exclude any of the children or grandchildren; the power was not an exclusive one. While she had a discretion as tothe shares to be given to them, she was bound to give each childand each grandchild a portion. Lippincott v. Ridgway, 2 Stock.164." (Italics mine.) See, also, Inglis v. McCook, 68 N.J. Eq. 27.
The power conferred upon Mary T. Sheldon by item "Eighteenth" of the Urie will being general and unlimited, her disposition of the portion of the Urie estate subject to that power as made by her in the first codicil to her will was a valid exercise thereof. In view of this conclusion, it is unnecessary to consider the question touching the result of a defective execution of the power which has been ably argued by counsel on both sides of this controversy.
 5.
WAS THE ANNUITY GIVEN TO SARAH JOSEPHINE JOHNSTON BY CLAUSE THIRTEENTH OF THE SHELDON WILL IN PARTIAL EXERCISE OF THE POWER OF APPOINTMENT IN THE URIE WILL? *Page 428 
In the disposition of that portion of the Urie estate over which she had a power of appointment, Mrs. Sheldon referred to it uniformly as the property of Mrs. Urie and distinguished between her own estate and that of her sister, as follows:
First Codicil — Item "Second. — I give and bequeath from my own estate as distinguished from the estate of my sister, Susan E. Urie, over which I have the power of disposition, the sum of Ten Thousand Dollars, to James Sheldon."
Item "Fourth" — last paragraph. "All the rest, residue and remainder of the property of my sister, the said Susan E. Urie, over which I have power of disposition by the terms of her will, I give and bequeath," c. * * * "If * * * real estate, it is my wish that the same shall be sold under the power of salecontained in my said sister's will," c.
Item "Fifth" directs inheritance and other taxes on "legacies given by this codicil shall be paid out of my general estate."
Second Codicil, Item "Fifth." "I hereby give", c., "Ten Thousand dollars to be paid out of my own estate and not out of the estate of my sister Susan E. Urie over which I have power of appointment."
By item "Thirteenth" of her will Mrs. Sheldon gave to a trustee a fund sufficient to produce a net income of $400 per annum, "such fund, if possible, to be taken from the money or securities received from the estate of my deceased sister, Susan E. Urie," the income to be paid to Miss Johnston for life and upon her death "the principal of said trust fund shall fall into and become a part of my residuary estate."
By the first codicil to her will Mrs. Sheldon disposed of the entire portion of the Urie estate over which she had the power of appointment.
The fact that the trust fund created by item "Thirteenth" of her will is to fall into the residue of her own estate upon the death of the life tenant; that by item "Fourth" of the first codicil to her will she disposes of the entire portion of the Urie estate over which she had a power of appointment, and that in that codicil she makes no reference to the bequest contained in item "Thirteenth" of her will, indicate to me *Page 429 
that the trust fund bequeathed by said item "Thirteenth" should be set up from the general estate of Mrs. Sheldon and that that was her ultimate intention. If, when she made her will, she intended by this bequest to exercise the power, the absence of any reference to this bequest in the codicil by which she expressly exercised that power, suggests a change of her original intention, and her final decision to provide for that annuity out of her own estate as distinguished from that of Mrs. Urie. Had she intended this to be in partial exercise of the power it would have been an easy matter for her to have said so. In Board ofHome Missions, c., v. Saltmer, 125 N.J. Eq. 33, the court (atp. 37), said:
"The question whether an instrument is in execution of a power or not depends solely upon the intent of the donee. This intent must clearly be shown in the instrument purporting to execute the power."
It cannot be said that the intent to exercise the power in making this bequest is "clearly shown" in the will.
 6.
IS THE FUND TO PURCHASE THE JOHNSTON ANNUITY UNDER THE SHELDON WILL TO BE SET UP OUT OF THE URIE TRUST FUND IN PREFERENCE TO LEGACIES TO OTHER APPOINTEES?
In view of my conclusion that the Johnston annuity fund should be set up out of the general estate of Mrs. Sheldon, this question need not be discussed.
 7.
HAS THE COMPLAINANT ROY R. KNIGHT ANY STANDING TO MAINTAIN THIS BILL OR EXCEPT TO THE TRUSTEES' ACCOUNTS?
It is conceded that complainant Knight has no right to maintain this bill unless he is entitled to receive that portion *Page 430 
of the Urie estate appointed to his mother, Delia Knight, by Mary T. Sheldon in item "Fourth" of the first codicil to her will. Delia Knight was a first cousin of Mary T. Sheldon and predeceased the testatrix. The question is, therefore, whether or not this appointment lapsed upon Delia Knight's death. The general rule is that where an appointee dies before the donee of the general power of appointment, the appointment lapses unless saved by statute. In 49 Corp. Jur. tit. "Powers" 1302, the rule is stated as follows:
"Lapsed Appointments. — a. In general, unless otherwise provided by statute, where one to whom an interest or estate is appointed by the donee of a power dies before the appointment takes effect, the appointment lapses, except where the appointment is made, not out of mere bounty, but in satisfaction of an obligation, whether legally enforceable or not, existing at the time the appointment takes effect, in which case the gift inures to the estate of the appointee. Similarly, where the subject-matter of a power fails before the appointment takes effect, the appointment lapses."
And see 69 Corp. Jur. (at p. 851) § 1963:
"In accordance with the general rules as to lapses of devises and bequests, an appointment by the will of the donee of a testamentary power ordinarily lapses upon the death of the appointee before that of the donee, and the property passes as if the power had not been exercised. It has been held that a statute for the prevention of lapses applies in the case of a testamentary appointment by one person under a power contained in the will of another."
And in 21 R.C.L. tit. "Powers" 805 ¶ 39:
"The usual rules which apply to the lapse of legacies given by a will apply with full force to wills executing powers of appointment, so that where an appointment is made by will in favor of one who predeceases the testator, the appointment lapses."
The English rule is the same. Duke of Marlborough v. LordGodolfen, 2 Ves. Sr. 61.
The lapsing of the appointment to Delia Knight is not prevented by our statute against lapsed gifts (R.S. 1937, 3:2-18) as that statute does not apply to cousins. The act was so construed inAikman v. Armstrong, 81 N.J. Eq. 427. *Page 431 
See, also, Bradford v. Andrew (Sup. Court Illinois, 1932),139 N.E. Rep. 922, 924; Thompson v. Pew (Mass.),102 N.E. Rep. 122; Lincoln Trust Co. v. Adams, 177 N.Y.S. 889; In reBeaumont's Estate, 263 N.Y.S. 426. Aside from that I think Mrs. Sheldon intended the gift to lapse in the event that Delia Knight predeceased her. This is indicated by the fact that in paragraph "Fourth" of the first codicil she expressly excludes grand-nephews, grand-nieces and remote kindred. Roy R. Knight is a grand-nephew of Mrs. Sheldon's mother.
My conclusion is that this appointment lapsed and that Roy R. Knight has no interest in either the Urie or Sheldon estates and is, therefore, not competent to maintain this bill. Even if the appointment did not lapse, Roy R. Knight could not maintain the suit, as Delia Knight's executor or administrator would succeed to her rights. Thomas' Ex'rs v. Anderson's Adm'r, 21 N.J. Eq. 22; Hayes v. Hayes' Ex'xs, 45 N.J. Eq. 461.
 8.
HAS COMPLAINANT SALLIE ANN BROWN ANY STANDING TO MAINTAIN THIS BILL OR EXCEPT TO THE TRUSTEES' ACCOUNTS?
Under the Urie will, the complainant Sallie Ann Brown received a legacy of $5,000. Under the Sheldon will she is entitled to $2,000 as one of the appointees of the donee of the power of appointment. The $5,000 legacy under the Urie will has been paid. It was, therefore, conceded at the oral argument that as legatee of Mrs. Urie this complainant has no standing to maintain the bill or to except to the trustees' accounts. Her right to maintain the bill, if any, arises solely from the fact that she is one of the appointees of Mrs. Sheldon. Her rights, then, are no greater and no less than those of the other appointees who are parties to this proceeding. The question touching the right of such appointees to challenge the acts of the trustees of the Urie estate and to except to the trustees' accounts will be hereinafter considered under subheadings 10 and 11. *Page 432 
 9.
HAS THE COURT OF CHANCERY JURISDICTION TO VACATE THE CHALLENGED DECREES OF THE MONMOUTH COUNTY ORPHANS' COURT?
The answer to this question will be found in the fact that all proceedings in the orphans court are now proceedings in this court by virtue of the order of transfer; and this court has as complete control over those proceedings as though originally begun here and can make such orders and decrees as justice and equity require. That the challenged decrees were entered in another court is no bar to the exercise of this court's inherent jurisdiction in all cases of fraud and over all trusts. A vacation, and reopening of the decrees of the orphans courts are not prerequisites to the exercise of this court's inherent jurisdiction. This is not a collateral attack upon those decrees. The argument that a petition and order to show cause in the original proceeding in the orphans court is the proper proceeding finds its answer in the fact that that is exactly the procedure taken here; but the orphans court was relieved of the duty of disposing of that petition and order when the proceedings were transferred to this court. To all intents and purposes, so far as previous proceedings are concerned, it is as though the original proceedings were had in this court, the decrees entered here, the petition to open said decrees filed here, and the order to show cause issued by this court. That the court of chancery has complete jurisdiction in the premises cannot be doubted.
 10.
ARE THE DECREES OF THE MONMOUTH COUNTY ORPHANS COURT APPROVING THE SEVERAL TRUSTEES' ACCOUNTS BINDING UPON THE APPOINTEES OF MARY T. SHELDON? *Page 433 11.
ARE SUCH APPOINTEES ESTOPPED TO CHALLENGE MARY T. SHELDON'S ACTS AS ONE OF THE TRUSTEES UNDER THE URIE WILL?
These two questions may appropriately be considered together, for if Mrs. Sheldon's appointees are barred from attacking the trustees' accounts, it is of no moment whether it is by force of the decrees themselves — res adjudicata — or upon the theory of estoppel. Estoppel is a preclusion in law, resulting from previous act or conduct. It is based upon the conduct of one, or of another through whom the one claims. As a matter of fact, the doctrine of res adjudicata is a form of estoppel by matter of record, and thus the two defenses may merge in each other.
In support of the motion of City Bank and Farmers' Trust Company, as executor of the Sheldon will, joined in by the surviving trustee and the representative of Dr. Ackerman, the other deceased trustee, it is argued that the decrees are resadjudicata, and that the complainant and other appointees are estopped to challenge those decrees or any acts of the trustees thereby approved because they were represented in those accountings by Mrs. Sheldon, one of the trustees, who was also their predecessor in estate, and that they are therefore bound by her acts. I think the point is well taken and in considering this argument it must be borne in mind that these appointees were not ascertained until the Sheldon will became effective — long after the entry of those decrees.
In Shearman v. Cameron (Court of Errors and Appeals),78 N.J. Eq. 532, it was held that:
"It is a doctrine of universal acceptation that the judgment of a competent court acting within its jurisdiction is conclusive upon parties and privies as to all matters adjudged upon which the parties were of right entitled to be heard."
To the same effect is the pronouncement of the United States supreme court in Litchfield v. Goodnow, 123 U.S. *Page 434 549, 551, that "all privies whether in estate, in blood or in law, are estopped from litigating that which is conclusive on him with whom they are in privity." And see, also, In re Leupp,108 N.J. Eq. 49, and City Bank Farmers' Trust Co. v. McCarter,111 N.J. Eq. 316.
While the question as to who are privies in a given case is often a difficult one and "requires careful examination into the circumstances of each case as it arises" (Old Dominion CopperMining and Smelting Co. v. Bigelow, 203 Mass. 159;89 N.E. Rep. 193), I think it cannot be doubted that Mrs. Sheldon's appointees are in privity with her. In Buckingham v. Ludlum,37 N.J. Eq. 137, 141, Vice-Chancellor Van Fleet defined "privies" as "such persons as are privies in estate — as donor and donee, lessor and lessee, and joint tenants, or privies in blood, as heir and ancestor; or privies in representation — as executor and testator, or administrator and intestate; or privies in law — where the law, without privity in blood or estate, casts land upon another by escheat."
In Roarke v. Roarke, 77 N.J. Eq. 181, 185, Chancellor Walker adopted the definition of privies as "persons who are partakers of or have an interest in any action or thing, or any relation to another."
Mrs. Sheldon, as has already been suggested, not only had the power of appointment of a portion of Mrs. Urie's estate, but the remainder interest in the residue of that estate vested in her as Mrs. Urie's next of kin immediately upon Mrs. Urie's death. Until Mrs. Sheldon acted to divest herself of this remainder interest by exercising the power of appointment, and until such appointment as she made became effective by her death, title thereto remained in her. It so remained when each of the challenged decrees was entered by the Monmouth county orphans court. Had she not exercised the power of appointment the remainder of the Urie estate would have gone by operation of law to the heirs and next of kin of Mrs. Sheldon. It is not important that in this case they would also have been the heirs and next of kin of Mrs. Urie. The same result would have followed had Mrs. Sheldon's heirs and next of kin been strangers to Mrs. Urie.
On behalf of the complainant and other challenging appointees *Page 435 
it is argued that such decrees are not binding upon them because they had no notice of the filing of the accounts, nor opportunity to file exceptions thereto, and no chance to object to such decrees prior to their entry; and In re Shaw, 122 N.J. Eq. 536,
is cited in support of that contention. The answer to that argument is that such appointees not then being ascertained, were not entitled to notice and none could have been given them, for, prior to Mrs. Sheldon's death, they had no interest in the estate. McGill v. Trust Company of New Jersey, 94 N.J. Eq. 657.
Nor does the cited case support the argument. Counsel evidently overlook the fact that in the Shaw Case, as was pointed out by Vice-Chancellor Fielder, notice was not given to remaindermen who were in esse and ascertained at the time the account was filed.
The rule applicable to the instant case and which I consider dispositive of this motion is stated in Dunham v. Doremus,55 N.J. Eq. 511, and Woolsey v. Woolsey, 78 N.J. Eq. 517;affirmed, Id. 579. It is the so-called rule of virtual representation, and is based upon the principle of agency. Under this rule, those represented by a predecessor in title are bound by what the representative does or fails to do. While this rule of virtual representation is not altogther synonymous with the rule of estoppel, there may be an estoppel by representation and the arguments of counsel touching this doctrine may appropriately be considered under these headings.
In Dunham v. Doremus, supra, a bill was filed for the purpose of quieting title to real estate. The property formerly belonged to John Magee, who died seized leaving a widow and one child, Mary. By his will he gave the property to his daughter and said: "In case Mary should die without having any children, then I wish her mother to have and possess the property; should Mary have children I wish them to possess the property, share and share alike, at her death."
The testator's widow acquired a mortgage which was outstanding against the property and foreclosed it. The daughter was then twelve years old, and she was made a party to the foreclosure bill. The property was sold under the final decree in that case and title thus conveyed became vested in the complainants. Mary's children claimed an interest. *Page 436 
The court held that the sale cut off the unborn children of Mary, and said (at p. 513):
"The established rule of equity practice is that estates limited over to persons not in esse are represented by the living owner of the first estate of inheritance. Reynoldson v.Perkins, Amb. 564; Giffard v. Hort, 1 Sch. L. 386, 407;Lloyd v. Johnes, 9 Ves. 37; Mead v. Mitchell, 17 N.Y. 210;Calv. Part. 48 et seq.; Mitf. T. Pl. Pr. 24; 1 Dan. Ch. Pr.262. When, therefore, Mary Magee was brought into court to answer the complainant's charge that the mortgage created a lien upon the absolute fee-simple, and the complainant's prayer that the fee-simple should be sold to pay the mortgage debt, the decree that such sale should be made bound not only the estate of Mary Magee but also all estates which might thereafter have arisen."
Chancellor Pitney wrote the opinion for the prerogative court in Woolsey v. Woolsey, supra, and he stated the rule in the following language:
"Under our statutory system the jurisdiction of the orphans court over matters of accounting and distribution that are properly within its cognizance, is as complete and its decrees are as binding and conclusive as are the jurisdiction and decrees of the court of chancery. In all cases where a decree in equity could be binding upon persons not in esse at the time, or upon persons whose interests had not yet arisen, the decrees of the orphans court must be equally binding.
"The rule that all persons interested in the fund or property that is in question must be brought before the court in order to be bound by the result, is subject to some limitations, dictated by common sense, upon grounds of necessity or even of convenience. Where courts have to deal with property whose ultimate destination is in doubt, and which may, upon a certain contingency, go to persons not yet in esse or not yet ascertained, they must perforce proceed without the attendance of such persons, or not proceed at all. It results that such contingent interests are held to be bound if the interest be represented in the litigation by a trustee or (in some cases) by the predecessor in estate. 1 Dan. Ch. Pl. Pr. 227, 228, 229,266; Story Eq. Pl. §§ 140, 142, 144, 145, 146, 147; *Page 437 2 Spence Eq. Jur. 707; Dunham v. Doremus, 55 N.J. Eq. (10Dick.) 511; Hale v. Hale, 146 Ill. 227; 33 N.E. Rep. 858."
And see Boulton v. Scott's Adm'rs, 3 N.J. Eq. 231, as to the finality of decrees in the orphans court. See, also, StoryEq. Pl. §§ 144, 145, 792.
If the undisposed of portion of the remainder of the Urie estate vested in Mrs. Sheldon, as above suggested, then she was the predecessor in title of her appointees and the doctrine of virtual representation applies. In this connection, it is important to note that whatever interest any of the complainants or defendants who are seeking to surcharge the trustees has in this estate arises under Mrs. Sheldon's appointment. Had she not exercised that power of appointment none of them would have received anything from the Urie estate. To this extent they are beneficiaries of Mrs. Sheldon. In reaching this conclusion I have not overlooked the general rule of "relation back," to the effect that the donor of a power is considered as the benefactor of the appointee of the donee. McCook v. Mumby, 64 N.J. Eq. 394;Fidelity Union Trust Co. v. Suydam, 125 N.J. Eq. 458; but in1 Simes, Future Interests 462, the author says: "The appointee acquires title as much by reason of the act of the donee as by the act of the donor."
And in the instant case there is an additional reason for considering Mrs. Sheldon the benefactor of her appointees. It is argued on behalf of the surviving trustees and the representatives of the two deceased trustees that there was a merger of estates in Mrs. Sheldon which gave her an absolute fee in the undisposed of portion of the residue of the estate. It is clear, as already pointed out, that Mrs. Sheldon had a life estate in Mrs. Urie's residuary estate and was entitled to the income thereon for life. It is also true that she had a general power of appointment over a substantial part of that residue. This, according to respectable authorities, was "tantamount to a fee." But more than this, Mrs. Urie died intestate as to that portion of the estate over which Mrs. Sheldon had a power of appointment. Mrs. Sheldon, as next of kin, became vested with the remainder interest, and as she had both life *Page 438 
estate and remainder, these estates merged to constitute a fee in her, subject only to the outstanding power of appointment. This argument seems to find ample support in Westfield Trust Co. v.Beekman, Franklin v. Silvers, Skellenger's Ex'rs v.Skellenger's Ex'r, Den, ex dem. Holcomb v. Lake, Camden SafeDeposit and Trust Co. v. Guerin, In re Buzby, Sandford v.Blake, Capron v. Luchars, supra; Pedrajas v. BloomfieldTrust Co., 101 N.J. Eq. 105; affirmed, Id. 803; Pedrick v.Guarantee Trust Co., 123 N.J. Eq. 395; Carter v.Thayer-Martin, 122 N.J. Eq. 262; Dare v. New Brunswick TrustCo., Id. 349. If this is so, she might at any time prior to the termination of the life estate, put an end to the trust by a proceeding in this court. That she did not do so, whether because of ignorance of her rights or deliberate disregard thereof, is of no moment. The important fact is that had she failed to exercise the power of appointment, the undisposed of residue of the Urie estate would have vested in Mrs. Sheldon's next of kin by operation of law upon her death intestate. Or, Mrs. Sheldon could have entirely disregarded the power and disposed of the residue by will, as no one could have compelled her to exercise that power. Mississippi Valley Trust Co. v. Commissioner,76 Fed. Rep. 2d 197, 199; 49 C.J. 1247. I therefore fail to see how these appointees can consider anyone other than Mrs. Sheldon as their benefactor, or how the rule of "relation back" has any application here. Certain it is that Mrs. Sheldon was "the only person who could bring into existence an estate or interest in an appointee." Botzum v. Havana National Bank (Ill.),12 N.E. Rep. 2d 203. In that case the supreme court of Illinois said (at p. 205):
"Myrtle H. Botzum is the life beneficiary under this trust and the donee of a power of appointment to be exercised by her in her last will. In this suit she represented her own appointee as fully and completely as anyone having a future contingent interest could be represented in any case. She is the only person who could bring into existence an estate or interest in an appointee or turn the course of ownership of the corpus of the trust." *Page 439 
In McFall v. Kirkpatrick, 236 Ill. 281; 86 N.E. Rep. 139,
the legal title to land was conveyed to a trustee to pay the income to Eliza Jane Houston for life, then to convey to such person as Eliza by her last will and testament should appoint, and in default of appointment, to the heirs and assigns of Eliza. Thereafter, Eliza and her husband conveyed the property by warranty deed and the title thereto by mesne conveyances became vested in one Little. Little filed a bill in chancery setting forth all these facts and the instruments involved, and prayed that the trustee be directed to convey the legal title to him and that the interest of Eliza be extinguished and the title in Little be quieted. The trustee and Eliza were made parties defendant, but failed to file an answer and the bill was taken as confessed against them. The court granted the relief prayed for and directed a master to convey the legal title to Little if the trustee failed to do so in a specified number of days. Thereafter Eliza died, leaving a last will and testament wherein she exercised the power of appointment in favor of the plaintiff who brought an action of ejectment against the holder of the fee who traced his title through Little back to the warranty deed given by Eliza and her husband. In reversing a judgment for the plaintiff the court held that the appointee was bound by the proceeding to which the donee of the power and the trustee were parties, and stated (at p. 147 of 86 N.E. Rep):
"Where the owner of a vested estate is before the court, the interests of a contingent remainderman will be bound although he may not be formally made a party. American Bible Society v.Price, 115 Ill. 623; 5 N.E. Rep. 126; Temple v. Scott,143 Ill. 290; 32 N.E. Rep. 366; McCampbell v. Mason, 151 Ill. 500;38 N.E. Rep. 672. When the bill was filed, the plaintiff in this case had no interest, and was not ascertained even as one who might have a possible future interest by the exercise of the power of appointment. The trustee, who, it was alleged, had never assented to or acted under the trust, and to whom the deed was not delivered, was a party, and so was the one by whose act alone any future interest could be brought into existence. Eliza J. Houston, the donee of the power, was the only one who could bring into *Page 440 
existence any other estate or turn the course of the ownership of the property, and surely she represented her own appointee as fully and completely as anyone having a future contingent interest could be represented in any case."
Under the English rule, laid down in Leonard v. Sussex, 2Vern. 527; 23 English Reprints 940, the fact that Mrs. Sheldon, the life tenant of this trust, was a party to the accounting proceeding would bar her appointees. In that case the court said:
"As to the account that had been formerly taken in the cause, where Henry the father was plaintiff against the trustees; although he was but tenant for life, and the now plaintiff claims not under him, but paramount him by the will; yet the plaintiff or any issue of Henry not being in esse at the time, all persons were parties, that could then be made parties; and therefore decreed that account to stand and not to be ravelled into." (Italics the court's.)
In considering the question of estoppel it is pertinent to inquire if, under the circumstances of this case, Mrs. Sheldon, the life beneficiary and one of the trustees, could have challenged the intermediate accounts on the ground that the questioned investments were illegal and, on proof that they were, surcharged her co-trustees. But it seems to me that however this question may be answered, the result so far as her appointees are concerned, will be the same. Assuming, but for the purpose of argument only, that Mrs. Sheldon did have this right, the fact is that she did not avail herself of it, but participated in the accountings and not only acquiesced in their approval, but joined in the prayer therefor. Not having availed herself of such right, if she had it, she would now, if still living, be estopped to challenge the decrees. As she would be, so now are her appointees estopped. An unwise investment by a trustee cannot be repudiated by the person inducing it nor by anyone claiming through him. Afortiori, where the trustee himself is the predecessor in title and makes an unwise investment, as is here alleged.
Thus, in In re Perkins Trust Estate, 170 Atl. Rep. 255, the life tenant with a general power of appointment prevailed upon his trustees (of which he was not one) to make certain *Page 441 
illegal investments. His appointees sought to surcharge the trustees. In denying the appointees relief, the court stated:
"This action to surcharge the trustees with loss of the trust funds is brought after the death of Arthur Clark Denniston by his wife and the three persons named above as contingent remaindermen. We will not discuss in detail the investments involved. The auditing judge states as to them: `There cannot be the slightest question that in an ordinary trust estate, with the rights of life tenant and remaindermen to be protected, investments as herein made would be absolutely indefensible,' but `a life tenant with a general power of appointment has an estate tantamount to a fee' (see Lyon et al. v. Alexander, 304 Pa. 288,291, 292; 156 Atl. Rep. 84; 76 A.L.R. 1427), and `if, in the circumstances, with full knowledge of the facts and of (his) rights, the life tenant was content, (his) appointees will not be heard to complain.' Curran's Estate, 312 Pa. 416, 424;167 Atl. Rep. 597. The adjudication adds: `Since Arthur C. Denniston did not, and, in fact, could not have had the trustees surcharged in his lifetime, his appointee widow is accordingly now estopped from seeking such surcharge against the trustees. Likewise the contingent legatees under the will of Arthur C. Denniston * * * are in the same situation. These legatees owe their interest, not to the settlor, but to the life tenant through his power of absolute appointment. As he was estopped, so are those who claim through him.'"
Assuming, however, arguendo as above, that Mrs. Sheldon had no right to challenge the questioned investments, certainly her appointees cannot do so. They are so far her beneficiaries as to be precluded from challenging any of her acts either as trustees or owner of the estate which she by her appointment passed on to them.
It is argued that it was Mrs. Sheldon's duty, as trustee, to protect the trust fund, keep it intact, by the exercise of due care in making investments, for the benefit of those ultimately entitled to the corpus, i.e., her appointees, and that her failure to do so constitutes a fraud upon them. The argument is specious, but unsound. It would be entitled to more weight if the exercise of the power of appointment were not *Page 442 
optional and the remainder interest in the Urie estate were not vested in the trustee-appointor. But under the circumstances of this case, Mrs. Sheldon being under no obligation to any one to exercise the power, she owed no duty to anyone because there can be no duty where there is no obligation. And no fraud can be committed by one against another to whom he owes no duty. In reRogers Estate, 6 N.Y.S. 2d 256, 261, the surrogate's court of New York county said:
"There can be no breach of any fiduciary obligation by the donee where the power is general and beneficial, since he may exercise it in favor of such person or persons as he might choose. There is neither trust nor obligation in the nature of a trust because the power is not coupled with a duty."
Until the death of one having a general power of appointment "it is impossible to determine, with finality, whether there will be an appointee, and if so, who he will be. * * * Possible appointees have no title or interest in the corpus of the trust." Botzum v. Havana National Bank, supra.
It is clear, I think, that neither the complainant Brown, nor any of Mrs. Sheldon's appointees have any standing to maintain this bill or to except to the trustees' intermediate accounts because the decrees of the Monmouth county orphans court approving those accounts are res adjudicata and binding upon the complainant and other appointees, who are also estopped to challenge said decrees and are bound by the doctrine of virtual representation.
 12. DOES SUCH ESTOPPEL, IF ANY, APPLY ALSO TO MRS. SHELDON'S CO-TRUSTEES?
The attempt here is to surcharge not only the trustee who had a beneficial interest in the trust fund but also the other two trustees who had no such interest therein. It is pertinent therefore to consider whether or not the estoppel as to Mrs. Sheldon inures to the benefit of her co-trustees.
For the purpose of this motion we must assume not only the mental competency of Mrs. Sheldon but her participation *Page 443 
in the challenged investments. There is no suggestion or allegation in any of the pleadings (except in the "Third" separate defense of the City Bank Farmers' Trust Company, not involved on this motion) to the contrary. If all three participated and were equally responsible — they are all equally liable for the result of their administration, whatever it may be. All were obliged to perform whatever duty they owed to theircestuis. But the question is, to whom did they owe a duty? It has already been demonstrated that as trustee Mrs. Sheldon owed no duty to anyone other than herself. And as no one other than Mrs. Sheldon had any interest in the estate (that portion of it over which she had a power of appointment) the other trustees owed no duty to anyone but her. If they committed any impropriety in the administration of the trust, she, having participated therein, could not object. Assuming that she did not participate, then her failure to object bars not only her but her appointees as well. If the donee of the power did not complain her appointees cannot. No one but these appointees charge the co-trustees with any wrong, and they cannot be heard. In rePerkins Trust Estate; Lyon v. Alexander. The estoppel as to Mrs. Sheldon is available to her co-trustees.
Counsel for complainants argue that this motion should not be granted because such action might prevent any inquiry into the alleged fraudulent practices of the trustees, or one of them, resulting in the investments in illegal securities, and that an allegation of fraud is always a sufficient basis for such an inquiry. While there is no doubt of this court's inherent jurisdiction in all cases of fraud, it will not retry issues already disposed of in the orphans court even though the transactions approved by the decree of that court may have been fraudulent, unless the decree itself which is sought to be vacated was the result of such fraud. The fraud which would justify the opening of the decrees in this case is not such fraud as has been alleged, and which alleged fraudulent acts have been approved by those decrees, but fraud in the procurement of the challenged decrees. Van Dyke v. Van Dyke, 72 N.J. Eq. 300;Voorhees v. Voorhees' Executor, 18 N.J. Eq. 223, 227; Dringer
v. Receiver of Erie Railway, 42 N.J. Eq. 573. *Page 444 
There is not even a suggestion that the decrees here involved were procured by fraud. The argument cannot avail the complainants.
Referring now to the provisions of the Urie will with respect to the annuity funds, under paragraphs "Sixteenth" and "Seventeenth," the Johnston annuity fund should have been, and presumably was set up before Mrs. Sheldon's death, as that annuity became payable upon the termination of the annuitant's employment by the executors and trustees pursuant to the authority contained in the will. The annuity funds provided for in paragraph "Sixteenth" should be set up by the surviving trustee and maintained during the lifetime of the respective annuitants and will become distributable upon their respective deaths. If there are ample funds of the Urie estate to pay all the legacies to the appointees of the donee of the power, these funds will go to the residuary appointee; otherwise they will be distributable pro rata amongst the several appointees to whom specific amounts are appointed until all are fully paid and the balance, if any, to the residuary appointees.
I cannot close this opinion without expressing my appreciation to counsel on both sides of the controversy for the very able briefs which have been filed in the cause. They have been of very great assistance in the formulation of my opinion and I have drawn on them liberally in its composition. Without them, a hard task would have been much harder.
The main point of difference between the complainants and the defendant trustees is due to the fact that they argued from two different premises; the complainants that Mrs. Sheldon had no title in the remainder of the Urie estate except a life interest in the income; and the trustee defendants that Mrs. Sheldon had title in fee by virtue of the unlimited power, or by intestacy because there was no gift over of such remainder after the life estates. Complainants' argument is directed mainly to the question of what estate Mrs. Sheldon acquired under the Urie will. It overlooks the fact that two estates vested in Mrs. Sheldon, one, a life estate, under the will; two, a vested remainder, subject to voluntary divestment, by operation of law.
I will advise a decree in accordance with these conclusions. *Page 445